NANCY C. WESTON, Appellant, *v*. BRAYTON IVES, Member and President, etc., Respondent.

The provisions of the constitution and by-laws of the New York Stock Exchange are obligatory upon its members as a contract.

By said constitution it was provided that " if any suspended member fails to settle with his creditors within one year from the time of his suspension, his membership shall be disposed of * * * and the pro-

ceeds paid *pro rata* to his creditors in the Stock Exchange," excluding, however, from the distribution claims not filed before a transfer of the right of membership, and any difference "growing out of a claim on a put or call, notified for and reduced to a contract after failure." W., plaintiff's assignor, a member of the Exchange, failed, his seat was sold under the rules, and claims of members were filed and proved against him to more than the proceeds of sale. All of such claims, however, were on puts and calls, notified for and reduced to a contract after failure. In an action to recover such proceeds, *held*, that plaintiff was entitled to judgment ; that it was immaterial whether such contracts were valid or not, but that W., by the laws of the association, upon becoming a member, assented to an appropriation of his property in a particular way and to certain debts to the exclusion of all others, and no appropriation could be made to which he had not in like manner assented.

Also *held*, that provisions of said constitution, giving the governing committee of the Exchange all powers necessary for its control, making the decisions of the committee final, declaring that all debts without distinction shall be binding on members, and giving said committee cognizance of them, did not make a decision of said committee, admitting the claims so proved to share in the proceeds final ; that the committee could have no power to admit a claim which the constitution by its terms excluded.

(Argued October 10, 1884 ; decided November 25, 1884.)

APPEAL from judgment of the General Term of the Supreme Court, in the first judicial department, entered upon an order made May 23, 1882, which affirmed a judgment in favor of defendant, entered upon a verdict directed by the court.

The nature of the action and the material facts are stated in the opinion.

*James R. Marvin* for appellant. The New York Stock Exchange is a voluntary association. ( *White* v. *Brownell*, 2 Daly, 359 ; Constitution of the New York Stock Exchange, arts. 21, 81.) Whatever rights the Exchange has over its members and their membership, must be determined by the constitution, by-laws and rules or regulations of the Exchange. ( *White* v. *Brownell*, 2 Daly, 329 ; affirmed, id. 355 ; *Leach* v. *Harris*, 2 Brewst. 571.) The membership and the proceeds thereof in case of sale are property. These proceeds are subject to be applied to the payment of the debts of the member, notwithstanding a by-law whereby an assignment

can be made only to a member elect. Such by-law merely affects the use of the property. *Ritterband* v. *Buggett*, 42 J. & S. 42; *Hyde* v. *Woods*, Otto, 524; *Nicholl* v. *Eaton*, 91 U. S. 716; *Grocers' Bank* v. *Murphy*, 60 How. 426.)

*Robert Sewell* for respondent.    The Stock Exchange is neither a corporation, joint-stock association, nor partnership, and the rights and status of its members are to be determined solely by its constitution, which is signed by the members and is binding upon them, and constitutes the contract and the laws made by the members for their government.   ( *White* v. *Brownell*, 3 Abb. Pr. [N. S.] 325; 2 Daly, 329; affirmed, id. 355, 359; *Leech* v. *Harris*, 2 Brewst. 571; *S. C.*, 4 Abb. N. C. 303, note; *Thomson* v. *Adams*, 7 Weekly Notes, 281; *Lafond* v. *Deems*, 81 N. Y. 507.)   An article in the constitution of a Stock Exchange, which provides that the proceeds upon the sale of a seat shall be paid to creditors, who are members of the Exchange, is valid and will be enforced. (*Hyde* v. *Woods*, 94 U. S. [4 Otto] 523; affirming 1 Am. L. T. [N. S.] 354.)   As between a member of the Exchange and other members who are his creditors, the seat is not his absolute property, and upon its sale he is only entitled to demand from his associates only so much of its proceeds as exceeds the amount of his debts to them.   (Const. of the Ex., art. 14, § 3; *Hyde* v. *Woods*, 1 Am. L. T. [N. S.] 357; 94 U. S. [4 Otto] 525; *Thomson* v. *Adams*, 7 Weekly Notes, 281; *Pancoast* v. *Houston*, 5 id. 36; *Singerly* v. *Johnston*, 1 id. 122; affirmed, 3 id. 541; *Leech* v. *Leech*, id. 542; *Ritterband* v. *Baggett*, 42 N. Y. Supr. Ct. [J. & S.] 557.) The transfers to plaintiff, not being made in accordance with the provisions of the constitution of the Exchange, could confer no rights upon her as against the members of the Exchange, but were void as to them.   (Const., art. 13, § 1; *White* v. *Brownell*, 2 Daly, 329, 358.)   The power of the governing committee to alter the constitution can only be exercised by submitting the proposed amendment to the Stock Exchange.   (Const., art.

23.) The dominant idea of the constitution is, that upon the failure of a member, all the claims of the other members against him should be adjusted by the committee, and satisfied out of the proceeds of his seat. (Art. 14, §§ 2, 3; Art. 13, § 2; Art. 19.) The claims of Weston's creditors were valid and binding upon him. Optional contracts are to be presumed valid. (*Bigelow* v. *Benedict*, 70 N. Y. 202; *Story* v. *Salomen*, 71 id. 420; *Kingsbury* v. *Kirwan*, 77 id. 612.) The decision of the committee admitting the claims against Weston is conclusive in favor of their right to be satisfied out of the proceeds of his membership. (Const., art. 3, 19; *Lafond* v. *Deems*, 8 Abb. N. C. 344; 81 N. Y. 507.) An assignee of a non-negotiable chose in action takes it subject to all equities, even those existing in favor of third parties. (*Greene* v. *Warnick*, 64 N. Y. 220; *Trustees* v. *Wheeler*, 61 id. 88.) Plaintiff therefore took, subject to the provisions of the constitution, in regard to the payment of creditors. (*Hyde* v. *Woods*, 94 U. S. [4 Otto] 523.)

DANFORTH, J. At the close of the trial both parties agreed that there was no dispute about the facts, and the trial judge disposed of the question as one of law. He directed a verdict for the defendant, and his ruling having been sustained by the General Term, the plaintiff appeals. She sued, as the assignee of one John W. Weston, to recover from the defendant the sum of $6,000, the proceeds of Weston's seat in the New York Stock Exchange. The assignment was put in issue, but proved, and, from admissions in the pleadings, it appeared that the New York Stock Exchange was a voluntary association, organized for the purpose of conducting and regulating the business of dealing in stocks in the city of New York; that the defendant was a member and its president; that John W. Weston, on or about the 26th of February, 1879, was a member and engaged in the business of buying and selling stocks until on or about the 22d of January, 1879, when he failed and notified the Stock Exchange of his failure; that on or about the 26th of February, 1879, the governing committee of the Stock

Exchange adjudged that his failure had been caused by doing business in a reckless and unbusiness like manner, and for that reason declared him ineligible for readmission and directed his membership to be sold under and by virtue of the constitution and by-laws of the association; that said seat was sold under such authority and the sum of $6,000 realized therefor, but the defendant, by answer, denied that this money belonged to Weston or his assigns, and making no claim to it either for himself or the Stock Exchange, claimed the right to retain it under its constitution and by-laws, by which, as he alleged, the proceeds of the seat of a member are specifically pledged to pay to its other members such claims as they should have upon a suspended or insolvent member; that Weston was bound by such constitution and by-laws, and that one of the conditions upon which he became a member was that his seat should be sold as security for his indebtedness to members of the New York Stock Exchange. The defendant further alleged that after the action of the committee aforesaid, and after the sale of the seat as above set forth, the committee proceeded, under the provisions of the constitution and by-laws to call upon the members of the Stock Exchange to file such claims as they should have against the seat of Weston, and thereupon claims were filed and proven against him, amounting in the aggregate to $12,034.81, "and," the defendant averred, "that the committee still holds the said sum of $6,000 to be distributed *pro rata* among the said claimants unless the court should otherwise direct," and offered "to pay the $6,000 into court upon the substitution of these claimants as defendants in this action in his place and stead, and upon being discharged from all further liability herein or hereunder."

In line with these admissions is the proposition stated by the respondent's counsel as the result of his argument on this appeal, that "an article in the constitution of a Stock Exchange which provides that the proceeds upon the sale of a seat shall be paid to creditors, who are member of the Exchange, is valid and will be enforced;" and that, as "between a member of the Exchange and other members who are his creditors, the

seat is not his absolute property, and upon its sale he is only entitled to demand from his associates so much of its proceeds as exceeds the amount of his debts to them."

Except for these concessions the case might present questions of considerable difficulty. As it stands we come at once to the only material inquiry, whether the claims referred to are such as are to be paid out of the proceeds of the sale, within the meaning of the constitution and laws of the Exchange, as they existed while Weston was a member of that body. By these the appellant concedes her assignor and herself are bound. The learned counsel for the respondent, in support of the proposition to which I have referred, cites article XIV, section 3 of the constitution of the association. It provides as follows: "If any suspended member fails to settle with his creditors within one year from the time of his suspension, his membership shall be disposed of by the committee on admission, and the proceeds paid *pro rata* to his creditors in the Stock Exchange."

That this is to be taken with some qualification appears from a subsequent part of the article which distinguishes between claims growing out of transactions between partnerships and claims of individual creditors of the member in default, and section 4 of the same article excluding all claims to a distributive share of such proceeds which are not filed before the transfer of the right of membership. The appellant insists, that it is also qualified by an amendment, which appears as a foot-note to section 4, declaring that "no difference growing out of a claim on a put or call, notified for and reduced to a contract after failure, will be recognized as entitled to a distributive share of the proceeds of a membership." Its validity is disputed by the defendant, but we are of opinion that the appellant's contention in this respect should prevail.

Article II, section 1, vests the whole government of the Exchange in a governing committee; article XXIII of the constitution provides that " all alterations of the constitution and by-laws shall be made by the governing committee and shall be submitted to the Stock Exchange, and if not disapproved by

two-thirds of all the members in good standing within one week, they shall stand as the laws of the association," and it clearly appears in evidence, not only by the testimony of the secretary of the Exchange, but its records, that the foot-note, so called, was a resolution and decision of the governing committee, and as such, at the request of the committee, announced to the board by its president on the 23d of May, 1877.

It was not disapproved by its members, and was printed and appended to the article as it now reads, and the secretary says the governing committee acted under it in the disposition of cases " as soon as it was put in the constitution." Nor can I see any foundation for the suggestion that it was limited to a particular case. It was first applied in terms to that case, but then made general, and when submitted to the board and printed in the constitution, was in the form above set out. If further evidence is needed it may be found in the action of the board, ·July 25, 1879. They then said, by resolution, " add to foot-note, article XIV, constitution : ' But this ruling shall not be interpreted as affecting a right to any balance which may remain after the distribution made upon contracts existing prior to a failure.' " This subsequent amendment cannot, of course, affect the plaintiff, for it was made after her assignor had ceased to be a member and after the fund had come into the defendant's hands, after it had been notified of the assignment to the plaintiff and demand upon it for the money, and even after this action was commenced. But it clearly shows the understanding of the defendant as to the character of the foot-note of May, 1877.

That provision seems to be a perfect answer to the defendant's claim. It forms part of the agreement of Weston's membership. It is not controverted that every debt in question grew out of transactions on " puts and calls," that none of them were notified or reduced to a contract before his failure, but all afterward and after notice of that failure to the Stock Exchange. We do not find it necessary to consider whether such contracts are valid or not. It is immaterial. The provisions of the constitution and the laws of the association are

obligatory upon the parties as a contract. By their terms and his membership, Weston assented to the appropriation of his property in a particular way, and to certain debts to the exclusion of others. It is by that assent only that the defendant had power to convert his property into money, and no application can be made of it to which he has not in like manner assented.

Our attention is called by the learned counsel for the respondent to other provisions of the constitution — to article III, which vests governmental control of the Exchange in the governing committee, and gives it power necessary for the government of the Exchange and to try all offenses under or against the laws of the Exchange and all charges against members, and makes their decision final; and to article XIX, declaring that " all debts, without distinction, are binding upon the members of the Exchange, and the governing committee will take cognizance of them upon complaints properly made and presented." And a claim is made that the decision of that committee admitting those claims to share in the proceeds of the seat, is final. The committee could have no power beyond that given by the contract, nor admit a claim which the constitution by its very terms excluded. When the committee acted, Weston was not a member of the Exchange, nor were the debts subjects of complaint within the meaning of article XIX. Its terms cannot be so construed as to embrace the question here. It is not in controversy whether the debts are binding or disputed, but whether, under the restrictive language of the constitution, they can share in a particular fund. We are of the opinion that they cannot, and as no other defense is made to this action, we think the plaintiff should have prevailed.

The judgment of the General Term should, therefore, be reversed and a new trial granted, with costs to abide the event.

All concur.

Judgment reversed.