ROLLIN MATHEWSON, EXR\ *et al.*

*v.*

GEORGE P. DAVIS *et al.*

*Opinion filed June 19, 1901—Rehearing denied October 10, 1901.*

1. TRUSTS—*when trustee is not chargeable with interest.* Where the only duty of one receiving a deposit of money on trust is to be always ready to pay it over whenever the beneficiary is entitled to it, he is not ordinarily chargeable with interest.

2. SAME—*when mingling of trust funds does not create liability for interest.* One who receives money under an agreement to pay the same over to a party when the title to certain property should be cleared, is not liable for interest before such title is clear, although he deposited the money, with other funds, in his own name, where it appears there never was a time after the deposit was made that his check for the amount would not have been honored by the bank where the money was deposited. (MAGRUDER, J., dissenting.)

3. SAME—*when executors are chargeable with interest for withholding trust fund.* Executors are chargeable with interest upon a fund which was held by their testator, to be paid over by him to a certain party as soon as the title to certain land was perfected, where, though the title to such land was perfected by limitation soon after their testator's death, they refused to pay over the money until deeds were made or some proceeding was had to perfect the title; but such action is not ground for compounding interest.

4. SAME—*equity will not compound interest except in a case of gross delinquency.* A court of equity has power to compound interest annually or at shorter periods, according to the delinquency of the trustee; but interest will not be compounded except in cases of gross delinquency.

*Mathewson* v. *Davis,* 91 Ill. App. 153, reversed.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of McLean county; the Hon. COLOSTIN D. MYERS, Judge, presiding.

RALPH F. POTTER, for appellants:

Trustees, and others sustaining a fiduciary and confidential relation, cannot deal on their own account with the thing or the person falling within that trust relationship. And it avails nothing that the intentions of the

trustee are honest. *Thorp* v. *McCullum,* 1 Gilm. 625; *Dennis* v. *McCagg,* 32 Ill. 445; *Miles* v. *Wheeler,* 43 id. 126; *Michoud* v. *Girod,* 4 How. 503.

Executors are charged with the administration of a trust of which their testator was trustee, on its original terms. 1 Perry on Trusts, secs. 264, 343, and cases cited; *DePeyster* v. *Ferrers,* 11 Paige's Ch. 13; *Schenck* v. *Schenck's Exrs.* 16 N. J. Eq. 174; *Seymour* v. *Freer,* 8 Wall. 218.

A trustee or other fiduciary must not mingle trust funds with his own, and is prohibited from gaining any advantage to himself from the use of the fund. 1 Perry on Trusts, secs. 447, 454; 2 Pomeroy's Eq. Jur. secs. 1076, 1077; *Seymour* v. *Freer,* 8 Wall. 218.

When a trustee or other fiduciary uses trust funds in his personal business, all profits from such use belong to the beneficiary. 2 Pomeroy's Eq. Jur. secs. 1052, 1075; 1 Perry on Trusts, secs. 427, 429; *Barney* v. *Saunders,* 16 How. 543; 2 Story's Eq. Jur. sec. 1276.

Where trust funds are used in the personal business of the trustee and no account of profits is rendered, the beneficiary is entitled to interest with annual rests, for the burden of proof is on the trustee to show that he has made no profits or received no benefits from the money; and if he refuses to account or show the amount of profit received the court will give compound interest, in order that it may be certain that the *cestui que trust* gets the profits from the trade or business in which the trustee has employed the money. 1 Perry on Trusts, sec. 271; *Ogden* v. *Larrabee,* 57 Ill. 398; *Hurd* v. *Goodrich,* 59 id. 450; *Asay* v. *Allen,* 124 id. 391; *White* v. *Sherman,* 168 id. 604.

JOHN E. & MAYNE POLLOCK, for appellees:

The complainants in this cause ask for an accounting of a matter which has negligently been let run for over thirty years, when the lapse of time, which has carried with it the life and memory of witnesses, makes it now impossible to render any account. Under these circum-

stances they are precluded by their *laches* from having
an account in respect to the interest on this money. *God-
den* v. *Kimmell*, 99 U. S. 201; 12 Am. & Eng. Ency. of Law,
550; *Lyon* v. *Chase*, 51 Barb. 13; *Dickerman* v. *Burgess*, 20
Ill. 266; *Ellison* v. *Moffatt*, 1 Johns. Ch. 47; *Lloyd* v. *Kirk-
wood*, 112 Ill. 339.

The only duty of Judge Davis or his representatives
in this case was to have the money always ready at their
command when it should be legally demanded of them,
and under such circumstances they are not to be held
accountable for interest. *Meek* v. *Allison*, 67 Ill. 46.

The deposit of this money in Judge Davis' individual
name is not sufficient to charge him with interest on the
same. *Estate of Schofield*, 99 Ill. 513.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the
court:

The controversy in this case is over the question
whether appellees, as executors of the will of David
Davis, deceased, are liable to appellants for interest up-
on a sum of money deposited with said David Davis to
be held by him until the title to a tract of land should
be perfected, and if liable for interest, for what period it
shall be charged, and whether it ought to be compounded.

In the year 1865 Brockholst Mathewson, of Johnston,
Rhode Island, was the owner of eighty acres of land in
Christian county, in this State. David Davis, of Bloom-
ington, had sustained some business relations with Math-
ewson, and through his agency a contract for the sale of
the land was made to William A. Goodrich. Mathewson
died before a deed was executed, giving all his property
by will to his brothers, George and Rollin Mathewson,
who were named executors of the will. George Mathew-
son died before the testator, and Rollin Mathewson was
the sole executor. The deed could not be obtained from
the heirs of George Mathewson, and on February 13, 1867,
Judge Davis wrote to Rollin Mathewson, the executor, as

follows: "The land is unoccupied and can't be protected unless a written contract is given to Mr. Goodrich reciting the payment of money and that the deed will be made as soon as it can be done. This you can execute by signing, sealing and acknowledging as executor of your brother's will. I will get the money from Goodrich and retain it until the title is perfected, when I deliver him such a contract or bond for the deed. I have paid the taxes for many years for your brother at his request and am continuing to pay them. Be good enough to make out such a contract and enclose it to me. Goodrich will not hold his offer good much longer. Of course, I wish to be refunded the money I have paid for taxes, but I want to get rid of the matter also. I have kept the business in charge for your brother on account of my old business relations with him. I can deposit the money in bank where I live, to await the transmission of your deed. This letter is written in presumption that you cannot now perfect the title."

On May 28, 1867, Judge Davis received $880, the purchase price of the land, to hold the same, as proposed in his letter, until the title should be perfected in the purchaser, William A. Goodrich. The money was deposited by Judge Davis to his credit in his own account at the First National Bank of Bloomington, and the taxes referred to in his letter, which he had paid, amounted to $51.28. William A. Goodrich went into immediate possession upon his purchase and afterwards sold the land to H. L. Vandeveer, who conveyed it to E. A. Vandeveer. Said William A. Goodrich or the said grantees have ever since had possession of the land and received the rents and profits thereof. The money remained on deposit with Judge Davis according to the agreement, and nothing was done towards perfecting the title or making the deed. The only thing that appears to have been done up to about the time of the death of Judge Davis, in the year 1886, was that Rollin Mathewson wrote him,

inquiring about the matter, early in 1871, and afterward Davis replied that if he would have the deed made for the premises and sent to him he would bring the matter to a close. No deed was made, and the executor left the money on deposit with Judge Davis, as before.

Judge Davis died on June 26, 1886, leaving a will, of which the appellees are surviving executors. From the death of Judge Davis a correspondence was kept up between his executors and Rollin Mathewson, the executor of Brockholst Mathewson, in which the latter sought to secure payment of the money. No deed had been made, but the executors of Judge Davis admitted that the Statute of Limitations had perfected the title to the land, after twenty years' possession, in Goodrich and his grantees. They acknowledged that Goodrich had paid for the land and that he and his grantees had been in possession over twenty years and had put on valuable improvements, and that the title was perfect, but they insisted on having some proceeding in chancery or a deed from all the heirs of Brockholst Mathewson, and refused to pay over the money without having the title perfected by such proceeding or deed. The correspondence continued, Rollin Mathewson insisting upon payment, and in 1897 Goodrich and the present owner released all claim to the purchase price. A satisfactory conveyance was made to E. A. Vandeveer, the owner of the land. This suit was then commenced by the filing of a bill by Rollin Mathewson in his own right and as executor, and by the heirs of George Mathewson, the appellants, against the executors of Judge Davis, appellees, for an accounting and payment of the fund, with interest, and for general relief. The cause was referred to a master in chancery, who took the evidence and reported, recommending a decree for $828.72,—the amount of the deposit less the taxes,—and also for interest on said sum at six per cent for six years, five months and seven days. The master stated that he arrived at this period for which interest

was charged by taking the pass-books of Judge Davis in his account with the First National Bank, and when the account was balanced on the pass-book and showed a balance of less than the amount of the fund he took the period up to the next balancing when the balance was more than that sum. Adding these periods together during the thirty-three years that the money had been deposited, they amounted to six years, five months and seven days. The circuit court sustained an exception to the report on the subject of interest, and held that appellees were not liable for any interest, and entered a decree for $828.72 against them, with the costs of the proceeding. The Appellate Court for the Third District reversed the decree of the circuit court and sustained the report of the master, and directed the circuit court to enter a decree for the sum recommended by the master, $1145.72, with interest on the principal sum from the date of the master's report at six per cent, and all the costs except such as were made by improper joinder of the other appellants with the executor as complainants.

The claim of appellants is, that they are not only entitled to the fund which Judge Davis received under the agreement to hold and pay over to them when they should make the title perfect, and which fund passed to his executors, but also interest thereon from May 28, 1867, and that such interest should be compounded at the legal rate, with annual rests. The basis of this claim is, that it was a violation of the trust by Judge Davis to deposit the money with his other funds in his own name; that he thereby became liable to pay interest on the fund, and that appellees must therefore pay interest from the date when Judge Davis converted the fund to his own use by depositing it to his personal account. It is not claimed that it was the duty of Judge Davis to invest the fund or to make it bear income for the benefit of appellants or any other person, and it is clear that his only duty was to have the money ready to be paid over when the

title should become perfect and it should be called for. Judge Davis was a very large stockholder in the First National Bank and generally had a large deposit of money to his credit, and there was never a time after the fund was deposited with him that his check, or that of his executors, for the amount would not have been paid. Deposits in the bank were very largely in excess of the amount during a long period of years and only fell below it a few times, and there is no evidence that Judge Davis or his executors did not at all times have the amount of money on hand to meet the obligation. In any view of the law, the theory adopted by the master and approved by -the Appellate Court was improper and illogical. If appellants' contention is correct, and Judge Davis became liable for interest because he mingled the fund with his other moneys and thereby converted it to his use, it would not relieve him or his estate from the liability because he was a man of wealth or because his estate was sufficient to re-pay the money. The fact that he had a large bank account would make no difference, and afford no ground for relieving him from interest when the account was large and requiring him to pay it when the account was small. The fact of the balance in the First National Bank would not show that Judge Davis or his executors did not have money on hand to answer the obligation, and if it had been shown that Judge Davis or his executors had no other money, the pass-book did not show the amount in the bank except on certain specified days from five to six months apart. The master assumed that if the balance was less than the sum on a certain day it remained so until the next balance, several months afterward, although the books showed large deposits immediately after such balance was struck.

We are of the opinion, however, that neither Judge Davis nor his estate became liable to appellants for interest, under the facts of this case, until appellants became entitled to the money, under the agreement, by the

title becoming perfect. Generally, the fund in the hands of a trustee is to be loaned or invested, so that it shall produce income for some beneficiary. Generally, it is the duty of the trustee to use diligence that the trust property may increase or produce income for the beneficiary entitled to such income or accumulation. If the trustee lets money remain in his hands unproductive, or if he converts it to his own use, he is liable for interest. In this case the deposit was under an express agreement, and it was not permanent in its nature but for a purely temporary purpose, and Judge Davis was liable to be called upon for the fund any day. If the title to the land should not be perfected the money would never become the property of appellants, and it did not, in fact, belong to them until the title became perfect. It was not within the scope of the agreement or trust that the money should be loaned or increased or that it should produce income, and the only duty of Judge Davis or his executors was to always hold themselves in readiness to pay it when the event should occur. If that was done there would be no breach of duty toward appellants, whose only right was to receive the money upon compliance with the agreement. Up to the time that the title became perfect there was no withholding of money from appellants, and their right was enforceable only upon perfecting the title. Where the only duty of a person is to be always ready to pay over money whenever another is entitled to receive it, he is not ordinarily chargeable with interest. (*Meek* v. *Allison,* 67 Ill. 46; *Estate of Schofield,* 99 id. 513.) The evidence does not show that Judge Davis or his estate did not have the amount of money on hand at all times, but, on the contrary, they were always able to pay it over and their check would have been good for the money at any time.

There were difficulties in the way of making the title good by conveyance, but it became good under the Statute of Limitations as early as January 1, 1888. Rollin

Mathewson, the executor, was demanding the money and endeavoring to get it, and the appellees had full information of the facts. Goodrich and his grantees had been in possession of the premises for more than twenty years and the title had become perfect in them, so there was no good reason why the money should not have been paid. In the correspondence the executors practically conceded that the title was good under the Statute of Limitations, and it was clearly good by the twenty years' possession if not by possession under the color of title. If Judge Davis had lived the claim undoubtedly would have been paid at that time, but his executors retained the money, insisting upon deeds from all the heirs or some sort of a proceeding in chancery. The fund was withheld by appellees without sufficient cause, and they should be charged at the rate of interest fixed by the statute from January 1, 1888. We do not think that the interest ought to be compounded. A court of equity has power to compound interest annually or at shorter periods, according to the delinquency of a trustee, but interest will not be compounded except in cases of gross delinquency. (*Hurd v. Goodrich*, 59 Ill. 450.) Although we hold that the title to the land became perfect, there was some color for the claim of the appellees that a deed should be made or a proceeding in chancery instituted, and we are not disposed to charge them with compound interest.

Appellees have assigned a cross-error that a court of equity has no jurisdiction because there was a remedy at law and the claim was not proved against the estate in the probate court. The jurisdiction of a court of equity was questioned by demurrer, but on the demurrer being overruled, appellees answered without preserving the question in their answer. They submitted to the jurisdiction of the court, and it was only after the close of the testimony that they sought to raise it again by amendment. It was then too late. The subject matter of the suit is not foreign to the jurisdiction of a court of

equity.   Furthermore, appellees have waived all questions of jurisdiction if the case is decided as they claim it ought to be and they are not held liable for more than the principal sum.   They waived the question in the circuit court, renewed the offer in the Appellate Court and again make it here.   Appellees also say that appellants are precluded from having any right by negligently allowing their claim to run for over thirty years; but as to this they concede the jurisdiction and appellants' right so far as the principal sum is concerned.   The cross-errors are overruled.

The judgment of the Appellate Court and the decree of the circuit court are each reversed and the cause is remanded to the circuit court, with directions to enter a decree against appellees for $828.72, with interest at the rate allowed by the statute from January 1, 1888, and for the costs of the suit.                      *Reversed and remanded.*

Mr. JUSTICE MAGRUDER dissenting to so much of the opinion as holds that Judge Davis should not be charged with interest:

Any man who, as attorney or agent or trustee, becomes possessed of another man's money is chargeable with interest upon such money during the time he holds it, if he deposits the same in his private bank account and mingles it with his own funds, and by drawing checks against it and such funds from day to day uses it in his own private business or for his own private purposes and in aid of his individual operations.   In order to avoid liability for such charge he must keep a separate deposit of such money in some reasonably safe depository, either in the name of his principal, or in his own name as agent, attorney or trustee.   Such course was not pursued here; and however innocent Judge Davis might have been of intentional wrongdoing, his estate should be charged with interest during the time he kept the money and mingled it with his own funds and used it as his own.