JAMES BUHLE, Indiv. and on behalf of those similarly situated, Plaintiff-Appellant, v. CHICAGO BOARD OPTIONS EXCHANGE, INC., Defendant-Appellee.—A. P. ARCIERO, LTD., Plaintiff-Appellant, v. CHICAGO BOARD OPTIONS EXCHANGE, INC., Defendant-Appellee.

First District (3rd Division)   No. 87—0821

Opinion filed May 11, 1988.

Fishman & Merrick, P.C., and Washlow, Certow & Miller, both of Chicago (Stephen M. Merrick, Barton J. Springer, Kenneth F. Berg, Marvin A. Miller, and Patrick Cafferty, of counsel), for appellants.

Jenner & Block, of Chicago (David C. Bohan, of counsel), for appellee.

JUSTICE FREEMAN delivered the opinion of the court:

Plaintiffs, James Buhle[1] and A. P. Arciero, Ltd., appeal the trial court's granting of the motion of defendant, Chicago Board Options Exchange, Inc. (Exchange), to dismiss their amended complaints in two consolidated cases. The trial court dismissed the amended complaints for failure to state a cause of action.

On appeal plaintiffs contend that the amended complaints sufficiently allege that defendant owed a fiduciary duty to plaintiffs, that

---

[1]Plaintiff James Buhle brought his action on behalf of himself and all others similarly situated. During the pendency of this case in the trial court, however, Buhle did not seek certification of the matter as a class action.

defendant breached the fiduciary duty, and also that defendant breached its contractual duty to plaintiffs.

For the reasons stated below, we affirm the judgment of the circuit court.

Plaintiffs' amended complaints are identical except for the named plaintiff in each. The amended complaints seek recovery under the theories of unjust enrichment (count I), breach of fiduciary duty (count II), and breach of contract (count III). The trial court granted defendant's motion to dismiss the amended complaints for failure to state a cause of action with regard to each of the three counts. Plaintiffs appeal the trial court's ruling only regarding counts II and III, the breach of fiduciary duty and breach of contract counts.

Specifically, the amended complaints allege the following. The Exchange is a national securities exchange, the members of which trade options on common stock and other securities. Plaintiffs are former members of the Exchange who sold their memberships through the secretary of the Exchange. Plaintiffs' actions allege that the Exchange wrongfully invested proceeds from the sales of their memberships and wrongfully retained all profits made as a result of the investment.

The Exchange operates a facility in Chicago for the trading on an exchange of "put" and "call" options on various publicly held stocks and certain stock indices. The trading of "put" and "call" options and stock indices on the Exchange is conducted by members of the Exchange. The constitution and rules of the Exchange set forth terms relating to the approval of persons for membership, conduct of members, fees and dues of members, and the sale and transfer of membership interests. The constitution and rules of the Exchange provide that an owner of a membership interest may sell his interest by submitting, pursuant to Exchange Rule 3.14, a written offer of sale to the Exchange. A binding sale occurs when a bid, filed in accord with Exchange Rule 3.13, is matched with the offer. The purchaser of a membership interest must be approved by the Exchange.

Exchange Rule 3.15 provides that upon the sale of a membership interest, the Exchange shall "hold" the proceeds of the sale for a period of 20 days from the date of posting the "Notice of Effectiveness" regarding the sale, during which period claims against the proceeds may be made by Exchange members. Thereafter, as soon as practicable following the 20-day period, the proceeds of the sale are to be applied and paid for the purposes and in the order of priority set forth in Rule 3.15. After amounts owed to the Exchange, the clearing corporation, and other members are paid out, "[t]he surplus, if any," is

paid to the selling member.

Plaintiffs' amended complaints allege that the Exchange "retained all amounts earned or received from the investment of the proceeds of the sale of membership interests during the [20-day] claim period and has not paid any such amounts to, or for the benefit of, [plaintiffs]." Further, plaintiffs' complaints allege that "[t]here is no term or provision of the CBOE *** Rules or any other document *** authorizing the CBOE to invest the proceeds of the sales of membership interests or to retain the amounts, or any part thereof, earned or received from such investments."

Plaintiffs cite the following language from Exchange Rule 3.15:

> "Upon any sale of a membership ***, the Secretary shall *hold* the proceeds of the sale for a period of 20 days ***, during which period claims against the proceeds may be filed by members *for payment in accordance with this Rule.* ***
>
> * * *
>
> (f) The *surplus* *** of the transfer of membership, after provision for the above payments *** [for claims], shall be paid to the member whose membership is transferred ***." (Emphasis added by plaintiffs.)

Plaintiffs contend that the allegations of count II of their amended complaints, which incorporate the above-quoted language, sufficiently plead the creation of an express trust and hence the existence of a fiduciary relationship.

Plaintiffs cite *Sears v. First Federal Savings & Loan Association* (1971), 1 Ill. App. 3d 621, 275 N.E.2d 300, which defines an express trust as " '*** one which is created in express terms in the deed, writing or will, or which arises from the direct and positive action of the parties evidenced by a written instrument ***.' " (*Sears,* 1 Ill. App. 3d at 626-27, quoting 35 Ill. L. & Prac. *Trusts* §4, at 176 (1958).) Plaintiffs contend that Exchange Rule 3.15 is a "direct and positive action" of the Exchange and its members which clearly evidences their intent to create a trust.

Plaintiffs also assert that the use of the word "hold" in Exchange Rule 3.15 indicates the parties' intent to create a trust. Plaintiffs rely on *Oglesby v. Springfield Marine Bank* (1946), 395 Ill. 37, 69 N.E.2d 269, for the proposition that the use of the term "hold" has been seen traditionally as evidencing the intent of parties to create a trust. The supreme court in *Oglesby* stated that a document which reflects an express trust agreement contains words such as "in trust" or "for the use of" or "to have and to hold for the benefit of." Such language carries the inference that the settlor was reposing trust and confi-

dence in the donee or other party for a particular purpose. (*Oglesby,* 395 Ill. at 49.) Plaintiffs point out that *Oglesby* also provides that "[t]he use or nonuse of such words is not the controlling criteria as to whether an express trust has or has not been created." *Oglesby,* 395 Ill. at 49.

Plaintiffs assert that although the Exchange rules do not use the term "trust," the rules clearly manifest an intent to create a fiduciary relationship. Such an intent is manifested since membership, and accordingly the proceeds from the sale of membership, is a valuable property interest of the member and not of the Exchange. A member would not reasonably allow the transfer of ownership of valuable property without making an express agreement. Plaintiffs contend that Rule 3.15 does not expressly provide that a selling member transfer ownership of the proceeds to the Exchange. Rather, Rule 3.15 requires only that the proceeds be temporarily deposited with the Exchange. Plaintiffs assert that, generally, funds which are deposited only temporarily with another, as opposed to being transferred outrightly to another, are held in trust by the holder.

Plaintiffs also assert that the relationship between the Exchange and its members may be labeled an escrow arrangement. Plaintiffs contend that whether the relationship is called a trust relationship or an escrow agreement, in either case the Exchange is an agent with a fiduciary duty to its members. Plaintiffs assert that whether an agency relationship exists is an issue of fact to be determined after an evidentiary hearing, and not on the pleadings alone, as was done in the trial court.

■ A fiduciary relationship exists when a confidence is reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing the confidence. (*Herbolsheimer v. Herbolsheimer* (1975), 60 Ill. 2d 574, 577, 328 N.E.2d 529.) A fiduciary relation may arise when, as to each other, the parties are attorney and client, principal and agent, guardian and ward or like legal relationships. *In re Estate of Nelson* (1971), 132 Ill. App. 2d 544, 270 N.E.2d 65.

■ ■ In reviewing the lower court's dismissal of plaintiffs' amended complaints, we must accept as true all well-pleaded allegations in the amended complaints and construe all reasonable inferences therefrom in plaintiffs' favor. (*Edgar County Bank & Trust Co. v. Paris Hospital, Inc.* (1974), 57 Ill. 2d 298, 312 N.E.2d 259.) We hold that in the instant case, the trial court properly found that plaintiffs failed to state a cause of action for breach of a fiduciary duty. Plaintiffs have failed to allege that the rules of the Exchange contain

language which would clearly indicate an intent to create an express trust. *La Throp v. Bell Federal Savings & Loan Association* (1977), 68 Ill. 2d 375, 370 N.E.2d 188, *cert. denied* (1978), 436 U.S. 925, 56 L. Ed. 2d 768, 98 S. Ct. 2818; *Oglesby v. Springfield Marine Bank* (1946), 395 Ill. 37, 69 N.E.2d 269.

In support of their assertion that an escrow agreement was created between themselves and defendant, plaintiffs cite *Rinehart v. Rinehart* (1957), 14 Ill. App. 2d 116, 143 N.E.2d 398. *Rinehart* defines an escrow as the following:

> "[A] written instrument which by its terms imports a legal obligation, and which is deposited by the grantor, promissor or obligor, or his agent with a stranger or third party, to be kept by the depository until the performance of a condition or the happening of a certain event and then to be delivered over to the grantee, promisee or obligee." (*Rinehart,* 14 Ill. App. 2d at 123.)

Plaintiffs' complaints clearly fail to allege facts which establish the existence of an escrow agreement. There is no express escrow language, nor have plaintiffs alleged that there was any agreement with defendant which provided for the deposit of the funds with a third party.

The only language to which plaintiffs refer in the Exchange rules to support the inference of the creation of an express trust is the word "hold." That language is insufficient to create a trust. In *Oglesby v. Springfield Marine Bank* (1946), 395 Ill. 37, 69 N.E. 269, cited by plaintiffs, language which was held to indicate the intent to create a trust was "in trust," "to have and to hold for the benefit of," and "for the use of." There is no such language contained in the Exchange rules.

Further, after reviewing Exchange Rules 3.14 and 3.15, which are of record, we fail to find language in those rules which clearly indicates an intention of the parties to create a fiduciary relationship. Rather, the language of the rules supports a reasonable inference that a fiduciary relationship was *not* contemplated by the parties. For instance, with regard to the application of the proceeds of sale during or following the 20-day claim period, Rule 3.15 provides, in pertinent part:

> "(d) If a claim is contingent or the amount that ultimately will be due thereon cannot, for any reason, be immediately ascertained or determined, the Board *in its sole discretion* may, out of the proceeds of the sale of the membership, reserve and retain for later distribution in accordance with the Rules such amount as it may deem appropriate, pending the determination

of the amount due on such claim.

\* \* \*

(g) No recognition or effect shall be given by the Exchange to any agreement or to any instrument entered into or executed by a member or his legal representative which purports to transfer or assign the interest of such member in his or its membership, or in the proceeds or any part thereof, or which purports to create any lien or other right with respect thereto, or which purports in any manner to provide for the disposition of such proceeds to a creditor of such member, *nor shall payment of such proceeds be made by the Exchange on the order of such member.*" (Emphasis added.)

The above-quoted language is not consistent with an intent of the parties to create a fiduciary relationship for the benefit of plaintiffs. Rather, the language supports a reasonable inference that the parties intended that the Exchange have discretion to determine the priority of claims and ensure the payment of those claims. The rules appear to give the Exchange such discretion while limiting the power of the selling member to challenge that discretion or otherwise alter the distribution of the proceeds of sale.

Nor have plaintiffs alleged sufficient facts outside of the Exchange rules to establish the existence of a fiduciary relationship. Plaintiffs' assertion that its membership in the Exchange is a valuable property interest, in itself, fails to establish the intent of the parties to enter into a trust agreement. Plaintiffs contend that the language of the Exchange rules indicates that the parties intended that the proceeds of sale remain in the ownership of plaintiffs, former Exchange members, during the 20-day claim period. We do not find, however, that the Exchange rules manifest an intent of the parties that such proceeds be held in trust in favor of plaintiffs during the claim period.

In granting the motion to dismiss, the trial court properly looked to the cases of *La Throp v. Bell Federal Savings & Loan Association* (1977), 68 Ill. 2d 375, 370 N.E.2d 188, *cert. denied* (1978), 436 U.S. 925, 56 L. Ed. 2d 768, 98 S. Ct. 2818, *Mathewson v. Davis* (1901), 191 Ill. 391, 61 N.E. 68, and *Gonzalez v. Danaher* (1975), 30 Ill. App. 3d 992, 332 N.E.2d 603. The parties also cite these cases on appeal. We will review them here.

*La Throp v. Bell Federal Savings & Loan Association* held that the obligation to hold property and distribute it at some time in the future or upon the happening of a specified event does not of itself give rise to a fiduciary duty. The plaintiffs in *La Throp* were mortgagors whose contracts provided that the mortgagee would hold certain

tax and insurance funds "in trust to pay" tax and insurance obligations of the mortgagors. The plaintiffs claimed that the mortgage contract created an express trust regarding the funds. The plaintiffs alleged that the mortgagee violated the trust by commingling the subject funds with his own and investing the money and keeping the profits from the investment to himself.

The appellate and supreme courts affirmed the trial court's granting of the mortgagee's "motion for judgment on the pleadings or in the alternative for summary judgment or in the alternative to dismiss." The supreme court stated that the mortgagors failed to allege sufficient facts to establish the creation or breach of a fiduciary duty. Specifically, the court found no language in the mortgage agreement which required the defendant to segregate the funds, to pay earnings on the funds, or to pay interest on the funds. (*La Throp*, 68 Ill. 2d at 383.) In addition, the supreme court held that other language in the mortgage contract was indicative of a debtor-creditor relationship, which relationship is inconsistent with the existence of a trust. *La Throp*, 68 Ill. 2d at 383-84.

*Mathewson v. Davis* (1901), 191 Ill. 391, 61 N.E. 68, held that the executors of a decedent's will were not liable to the decedent's heirs for interest on money which the executors had a duty to hold until the title to a tract of land was perfected. The court found that the deposit was under an express agreement. The court found that the executors' "only duty was to have the money ready to be paid over when the title should become perfect and it should be called for." (*Mathewson*, 191 Ill. at 396-97.) Further, the court found that the heirs would never receive the money if title to the land was not perfected, but the executors had only to "hold themselves in readiness to pay it when the event should occur." (*Mathewson*, 191 Ill. at 398.) The court cited earlier case law which established that where the only duty of a person is to be always ready to pay over money whenever another is entitled to receive it, he is not ordinarily chargeable with interest. *Mathewson*, 191 Ill. at 398.

The court in *Gonzalez v. Danaher* (1975), 30 Ill. App. 3d 992, 332 N.E.2d 603, held that the plaintiff, who was a criminal defendant in another matter, was not entitled to interest earned on money he deposited with the clerk of the court to secure a bail bond. The appellate court affirmed the trial court's dismissal of the plaintiff's complaint for failure to state a cause of action. The appellate court found that the clerk of the court and other named defendants were not trustees for the plaintiff and that there was no express, constructive or resulting trust. (*Gonzalez*, 30 Ill. App. 3d at 993.) Further, the court cited

the rule in Illinois that interest cannot be recovered in the absence of a contract or statutory provision. (*Gonzalez,* 30 Ill. App. 3d at 994, citing *Aldrich v. Dunham* (1855), 16 Ill. 403; see also *People v. Meyerowitz* (1975), 61 Ill. 2d 200, 335 N.E.2d 1.) By its silence on the subject, the court found, the Code of Criminal Procedure of 1963 foreclosed the granting of interest to the plaintiff on the money deposited with the clerk. *Gonzalez,* 30 Ill. App. 3d at 994.

In view of the foregoing case law, the trial court in the instant case found that plaintiffs' amended complaints failed to state a cause of action based on a fiduciary duty. The court reasoned as follows:

"There is no language in the pertinent Exchange rules, particularly in rule 3.15, which creates a fiduciary relationship. The rule is primarily designed to serve the interests of the Exchange in general and of the seller's creditors in particular, including the Exchange. The seller is entitled to the proceeds, 'if any', only after all claims filed within the twenty day period are adjusted and after a priority of interests is addressed. There is no requirement that the Exchange hold these sales proceeds in trust for the sellers. There is no requirement that the sales proceeds be segregated from the Exchange's general account. There is no escrow language. There is no requirement that the Exchange invest the sales proceeds for the benefit of the seller or pay interest on them. The seller certainly has no right to the sale proceeds during the claim period and may never be entitled to them depending on the number of creditors and the amount of the claims. And while the Exchange did not own the sales proceeds during the claim period, it held them legally, and was not required to disburse them, or what remained of them, until after the creditor's claims were adjusted."

We find that the trial court thoroughly analyzed the plaintiffs' claims in view of pertinent case law. The language of the Exchange rules fails to establish an intent of the parties to create a trust. We do not believe that plaintiffs in the instant case sufficiently pleaded facts to support a reasonable inference that a fiduciary relationship existed between each of the plaintiffs and defendant.

We also find that the trial court properly distinguished *Janes v. First Federal Savings & Loan Association* (1974), 57 Ill. 2d 398, 312 N.E.2d 605, which plaintiffs also cite on appeal. In *Janes* a debtor-creditor relationship existed between the parties. The debtor authorized the creditor to disburse loan proceeds in accordance with the terms of a loan statement. Contrary to a specific authorization to disburse a sum certain to the seller and the title insurance company for

title charges, the creditor retained for itself a discounted sum and made lesser disbursements to the seller and title company. The supreme court stated that the creditor violated a clear duty owed to the debtor. *Janes,* 57 Ill. 2d at 408-09.

The trial court in the instant case properly noted that unlike in *Janes,* the plaintiffs here do not allege that the Exchange violated any express provision of its rules, for instance, that it failed properly to adjust creditors' claims or failed to pay the remainder of the sales proceeds to the selling members. The trial court stated, "[r]ather, like the plaintiffs in *Lathrop* [sic], *Mathewson,* and *Gonzalez,* plaintiffs here seek to impose conditions or duties on the relationship not imposed by the parties or statute." We agree with the trial court's conclusion.

*Madlener v. Finley* (1987), 161 Ill. App. 3d 796, 515 N.E.2d 697, a recent decision cited by plaintiffs on appeal, is distinguishable from the instant case. In *Madlener,* the plaintiff alleged that the defendant, clerk of the circuit court of Cook County, breached his fiduciary duty when he failed to deposit litigants' funds in interest bearing accounts during the pendency of their class action suit. The trial court dismissed the complaint and found that no breach of fiduciary duty occurred since the clerk was not specifically ordered by the trial court to deposit the plaintiff's funds in an interest bearing account. The appellate court reversed, holding that, as an elected public official, the clerk of court is held in public trust and owes a fiduciary duty to the people he represents. (*Madlener,* 161 Ill. App. 3d at 798.) The court held that the clerk should deposit the litigants' funds in interest bearing accounts, in order to protect and foster to the greatest degree possible the interests of those who have placed their trust and confidence in him as a public official. *Madlener,* 161 Ill. App. 3d at 799-800.

In the instant case, defendant, the Exchange, does not have the status of an elected public official, nor can we analogize the trust and confidence placed in a public official by the public to any trust or confidence that might be placed by former members of the Exchange in the Exchange. Therefore, we believe, the basis for finding a trust relationship in *Madlener* is not present in the instant case.

Since we have held that plaintiffs failed to state a cause of action for breach of fiduciary duty, we need not address plaintiffs' allegations regarding a breach of fiduciary duty.

■ Plaintiffs next contend that count III of the amended complaints sufficiently alleges that defendant breached its contractual duties to plaintiffs. The amended complaints allege that the constitution

and rules of the Exchange constitute a contract between all members of the Exchange with each other and with the Exchange. Plaintiffs allege that the Exchange breached its contractual duties by investing members' funds from the sales of memberships and retaining profits therefrom for its own use. Plaintiffs contend that the contract between the parties authorizes defendant only to hold and disburse those funds for specified purposes. The contract does not authorize the investment of funds from the sales of memberships, since members failed to assent to such a use of those funds. Further, plaintiffs assert that defendant's failure to pay them the profits from the investment as part of the proceeds of the sale to which plaintiffs are entitled also constitutes a breach of contract.

The trial court acknowledged that the Exchange rules establish a contractual relationship between the parties. The court, however, found that the plaintiffs failed to allege facts to indicate that the Exchange was barred from investing the sales proceeds or that, if invested, the earnings were to be held for the benefit of the selling members. Further, plaintiffs did not allege that the Exchange failed properly to adjust the creditors' claims or failed to pay the remainder of the sales proceeds to the selling members after claims adjustments.

We agree with the trial court and hold that plaintiffs failed to allege facts to support a reasonable inference that defendant breached the contract by violating any of the Exchange rules. Plaintiffs failed to allege that the Exchange rules or any other agreements of the parties prohibit defendant from investing the funds held during the 20-day period or retaining profits from such investment. See *Martindell v. Lake Shore National Bank* (1958), 15 Ill. 2d 272, 154 N.E.2d 683.

We also note that the trial court properly distinguished from the instant case the decisions in *Ryan v. City of Chicago* (1986), 148 Ill. App. 3d 638, 499 N.E.2d 517, and *Morton Grove Park District v. American National Bank & Trust Co.* (1980), 78 Ill. 2d 353, 399 N.E.2d 1295, cases which plaintiffs also cite on appeal. In *Ryan v. City of Chicago,* the plaintiff, a retired city employee, sought interest which the city earned on certain pension fund tax receipts. The plaintiff asserted that the city wrongly placed the money in a general city fund rather than depositing it into the pension fund. In holding for the plaintiff, the appellate court looked to the Illinois Pension Code, which requires the city to hold the proceeds of the property tax receipts "for the benefit" of the pension funds. The court stated that the Code required that any income or interest earnings derived from the holding of those funds necessarily belongs to the pension funds and could not be deposited into another account for the city. *Ryan,*

148 Ill. App. 3d at 643.

*Morton Grove Park District v. American National Bank & Trust Co.* (1980), 78 Ill. 2d 353, 399 N.E.2d 1295, involved an appeal from an order denying certain condemnees the income earned on a condemnation award deposited with the county treasurer by the condemnor during the time that the condemnees appealed the amount of the award. The supreme court reversed the denial order and held that the county treasurer was liable for the income. The court reasoned that the condemnation award unconditionally and at all times belonged to the condemnee, who could withdraw the funds at any time provided he was willing to forego or dismiss his appeal. (*Morton Grove Park District,* 78 Ill. 2d at 360.) Further, the court stated that if the county treasurer were allowed to retain investment income earned on funds in which the condemnees had an unconditional ownership interest, and to which they had an immediate right of possession, an unconstitutional "taking" of private property for public use would result. *Morton Grove Park District,* 78 Ill. 2d at 362.

In distinguishing *Ryan* and *Morton Grove Park District* from the instant case, the trial court noted that "[t]he Exchange rules, unlike the pertinent statutes in *Ryan,* do not anywhere require that earnings made on the investment of sales proceeds be paid to the selling members. Likewise, there is here no overriding question involving the constitutional proscription against the taking of private property for public purposes or no immediate right to the sales proceeds as was present in the *Morton Grove Park Dist* [*sic*] case." We agree with the trial court's conclusion that *Ryan* and *Morton Grove Park District* do not bear on plaintiffs' case.

On appeal plaintiffs also cite *Weston v. Ives* (1884), 97 N.Y. 222, in support of the proposition that, absent assent by the plaintiffs to such a use of the funds, defendant lacked the authority to invest the funds during the 20-day "holding" period and retain the profits. Further, plaintiffs assert, defendant breached the parties' contract by making such a use of the funds.

In *Weston,* the defendant allowed certain claimants to share in the proceeds of a forced sale of a New York Stock Exchange membership, even though such claims were specifically excluded by the constitution and bylaws of the Exchange. The court disallowed the claims and stated that since the plaintiff assented to the appropriation of his money in a particular way, and since it was by that assent only that defendant had power to convert the money, the defendant lacked the authority to apply the property in another way. *Weston,* 97 N.Y. at 229.

*Weston,* however, is distinguishable from the instant case. *Weston* involved the use of funds in a manner which was specifically prohibited under the New York Stock Exchange's bylaws. Unlike in *Weston,* plaintiffs here do not allege that the Chicago Board Options Exchange violated any of its rules regarding the use of the money or the priority of claims.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

WHITE, P.J., and RIZZI, J., concur.