HORACIO ALANIZ, Plaintiff-Appellant, v. SCHAL ASSOCIATES, Defendant (Thorne-McNulty Corporation, Defendant-Appellee).

Second District   No. 2—87—1014

Opinion filed October 7, 1988.

Michael S. Danian, of Waukegan, for appellant.

Brendan S. Power and Neil D. O'Connor, both of O'Connor & Schiff, of Chicago, for appellee.

JUSTICE DUNN delivered the opinion of the court:

Plaintiff, Horacio Alaniz, appeals from an order of the circuit court of Lake County which granted the motion of defendant, Thorne-McNulty Corporation, to dismiss count III of plaintiff's second amended complaint and which found no reason to delay appeal or enforcement thereof. Plaintiff contends that the trial court erred in dismissing that count because he was an intended third-party beneficiary of construction contracts entered into by Thorne-McNulty, defendant Schal Associates, and plaintiff's employer, Rite-On Roofing, Inc. We affirm.

Plaintiff's initial complaint alleged that on March 1, 1985, while he was working as a roofer at the construction site of the Bannockburn Green Shopping Center, he sustained personal injuries when an extension ladder he was using collapsed. He alleged that his injuries were caused by violations of the Structural Work Act (Ill. Rev. Stat. 1985, ch. 48, par. 60 *et seq.*) by Schal Associates, the construction manager of the project. Thorne-McNulty was not named as a defendant in the original complaint.

On June 23, 1987, plaintiff filed his first amended complaint. Count II of that complaint named Thorne-McNulty as a defendant, alleging that Thorne-McNulty had also violated the Structural Work Act. Thorne-McNulty moved to dismiss that count as barred by the two-year statute of limitations pertaining to actions for damages for personal injury (Ill. Rev. Stat. 1985, ch. 110, par. 13—202). The motion to dismiss count II was granted on August 21, 1987, and plaintiff does not challenge the dismissal of count II.

Prior to the dismissal of count II, plaintiff filed a second amended complaint adding count III against Thorne-McNulty. Count III alleged that plaintiff was an intended third-party beneficiary of contracts between Thorne-McNulty and Rite-On Roofing, and between Thorne-McNulty and Schal Associates. The subcontract between Thorne-McNulty and Schal Associates called for Thorne-McNulty to perform certain construction work on the Bannockburn project, and article 12 of the general conditions of the subcontract contained the following provision:

"The subcontractor [Thorne-McNulty] has the responsibility for maintaining the safety and loss prevention programs cover-

ing all work performed by it, and its subcontractors."

The contract between Thorne-McNulty and Rite-On Roofing, entitled "Hold Harmless Agreement," provided that Thorne-McNulty consented to Rite-On Roofing's use of certain scaffolding under the conditions that Rite-On Roofing indemnify and hold harmless Thorne-McNulty for any claims arising out of the use by Rite-On or its agents of the scaffolding and that no guarantee or representation was made concerning the safety of the scaffolding. Plaintiff alleged that his injuries were a proximate result of Thorne-McNulty's breach of the aforementioned contracts. Thorne-McNulty moved to dismiss count III pursuant to section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—615), and, as noted above, the motion was granted.

On appeal, plaintiff argues that the contract between Thorne-McNulty and Schal Associates made plaintiff an intended third-party beneficiary due to the sentence which provided that Thorne-McNulty had the responsibility to maintain safety programs covering work by Thorne-McNulty and its subcontractor, Rite-On Roofing. Therefore, plaintiff contends, Thorne-McNulty had a contractual duty to him, as an employee of Rite-On Roofing, to have a safety program which provided safe work conditions, including safe equipment. He concludes that, due to Thorne-McNulty's contractual duty, he may maintain a cause of action against Thorne-McNulty for personal injuries resulting from unsafe work conditions and equipment used on the construction project.

■ Although apparently no case involving contractual language similar to that found here has been decided in Illinois, the law regarding third-party beneficiaries is well established. A third-party beneficiary may sue for breach of a contract made for his benefit. (*Carson Pirie Scott & Co. v. Parrett* (1931), 346 Ill. 252, 257.) A third party may only sue for breach of contract, however, if the contract was entered into for the party's direct benefit; if the third-party's benefit is merely incidental, he has no right of recovery on the contract. (*Parrett*, 346 Ill. at 257; *People ex rel. Resnik v. Curtis & Davis, Architects & Planners, Inc.* (1980), 78 Ill. 2d 381, 385.) Whether a third party is a direct beneficiary depends on the intention of the parties, which must "be gleaned from a consideration of all of the contract and the circumstances surrounding the parties at the time of its execution." *Parrett*, 346 Ill. at 258.

■■ Our review of the contract here and the circumstances surrounding the parties at the time of its execution reveals that neither Thorne-McNulty nor Schal Associates intended to confer a direct ben-

efit to plaintiff by inclusion of the general language regarding safety and loss prevention programs. It appears, rather, that the contract was intended solely to benefit the contracting parties by setting forth their respective responsibilities during construction. As was stated by the court in *Kohlmeier v. Shelter Insurance Co.* (1988), 170 Ill. App. 3d 643:

> " 'As people usually stipulate for themselves, and not for third persons, a strong presumption obtains in any given case that such was their intention, and that the implication to overcome that presumption must be so strong as to amount practically to an express declaration.' " (*Kohlmeier*, 170 Ill. App. 3d at 653, quoting *Metro East Sanitary District v. Village of Sauget* (1985), 131 Ill. App. 3d 653, 657-58.)

Given the nature of the construction industry and the frequency with which construction injuries occur despite safety precautions, we do not believe the presumption set forth above has been overcome. Although plaintiff argues that the hold harmless agreement between Thorne-McNulty and Rite-On Roofing establishes that Thorne-McNulty was attempting to shift its responsibility towards plaintiff to plaintiff's employer, we construe the agreement as evidence that Thorne-McNulty never intended to directly benefit plaintiff or any other workers by guaranteeing their safety.

The cases cited by plaintiff do not alter our conclusion that the contracting parties did not intend to confer a direct benefit to plaintiff by inclusion of the general safety provision. In *Bates & Rogers Construction Corp. v. Greeley & Hansen* (1985), 109 Ill. 2d 225, a construction contractor brought suit against an architectural firm, employed as project engineers by the North Shore Sanitary District, for damages due to delay in completion of a construction contract entered into by the contractor and the District. The architectural firm was found to be the beneficiary of a clause in the contract which provided that the contractor would make no claim for delay damages caused by the District "or any of its representatives." (*Bates & Rogers*, 109 Ill. 2d at 229.) In that case, the plain language of the contract indicated an intent to directly benefit the architect.

Similarly, in *Baker v. S. A. Healy Co.* (1939), 302 Ill. App. 634, the intent to directly benefit the third-party claimants was clear from the contract sued upon. There, property owners brought suit against a construction firm for damages they sustained as a result of blasting during construction of a sewer. In *Baker*, the contract between the contractor and the sanitary district of Chicago provided that the contractor would, at its own expense, repair any damage to property as

well as to persons. (*Baker*, 302 Ill. App. at 655.) Because the language of the contract explicitly evidenced an intent to benefit the injured property owners, they were allowed to pursue their third-party claims. In contrast to *Baker*, the language of the contract in question here contains no promise directed specifically to third parties.

Likewise, in *Greenlees v. Owen Ames Kimball Co.* (1954), 340 Mich. 670, 66 N.W.2d 227, the contract sued upon was for the direct protection of the plaintiff. There, the plaintiff, a tenant operating a fur garment business, filed suit against the renovator of the building which housed plaintiff's business, based on the renovation contract between the building owner and the tenant. The tenant was held to be a direct beneficiary of the contract due to the provision that the renovation work was to be performed "in such a way as to cause a minimum of disturbance to daytime operations in the building." (*Greenlees*, 340 Mich. at 676, 66 N.W.2d at 230.) Since the building tenants were the parties whose daytime operations might be disturbed, the insertion of the above-quoted language was meant for the direct protection of the tenants. (*Greenlees*, 340 Mich. at 676, 66 N.W.2d at 230.) The general language of the contract here is not comparable to the specific protection afforded in *Greenlees*.

The other foreign jurisdiction case cited by plaintiff, *James Stewart & Co. v. Law* (1950), 149 Tex. 392, 233 S.W.2d 558, is facially somewhat similar to the present case. Upon closer analysis, however, the Texas court's interpretation of the third-party beneficiary claim is not consistent with Illinois law. There, it was held that, under a construction contract which required the defendant contractor and its subcontractors to carry automobile liability insurance, a construction worker who was injured by the truck of a subcontractor who carried no insurance could recover from the contractor for breach of contract. (*Stewart*, 149 Tex. at 399, 233 S.W.2d at 562.) In so holding, the Texas court stated that the contracting parties must be presumed to have intended that the benefit of insurance protection would flow to the plaintiff from the performance of the contract. (*Stewart*, 149 Tex. at 399, 233 S.W.2d at 562.) The Texas court made absolutely no distinction, however, between direct and incidental benefits as is required by Illinois law. *Parrett*, 346 Ill. at 257.

■ It is not enough that an incidental benefit will flow to third parties; only a direct beneficiary has a right under a contract. (*Resnik*, 78 Ill. 2d at 385.) We believe that more than the general safety provision found in the contract between Thorne-McNulty and Schal Associates is required to evidence an intent to directly benefit plaintiff. While plaintiff would most likely have received some benefit by

implementation of safety programs, such benefit is incidental to the direct benefit intended for the contracting parties, and thus is not sufficient to allow him to maintain an action on the contract. Plaintiff's action is better characterized as a tort action. See *Pippin v. Chicago Housing Authority* (1979), 78 Ill. 2d 204, 210.

The trial court's dismissal of count III of plaintiff's second amended complaint is affirmed.

Affirmed.

LINDBERG, P.J., and INGLIS, J., concur.