THE PEOPLE OF THE STATE OF ILLINOIS *ex rel.* NEIL F. HARTIGAN, Attorney General, Plaintiff, v. COMMUNITY HOSPITAL OF EVANSTON *et al.*, Defendants (Douglas Foster, Cross-Plaintiff and Appellant; Continental Illinois National Bank and Trust, Cross-Defendant and Appellee).

First District (4th Division)   No. 1—87—3143

Opinion filed September 21, 1989.

JIGANTI, P.J., dissenting.

Fred R. Harbecke, of Chicago, for appellant.

Alan S. Ganz, of Rooks, Pitts & Poust, of Chicago (William J. Barath, of counsel), for appellee.

JUSTICE McMORROW delivered the opinion of the court:

Dr. Douglas Foster (Foster) appeals from the trial court's dismissal of his cross-claim against Continental Illinois National Bank and Trust (Continental Bank or the Bank). The Attorney General of Illinois (the Illinois Attorney General) filed suit against Foster and Continental, alleging that they had mishandled and dissipated a restricted endowment fund donated to the Community Hospital of Evanston (Community Hospital or the Hospital). Foster was a member of the board of directors of Community Hospital during the relevant time period. Continental Bank had agreed to provide certain investment and management services to Community Hospital with respect to the Hospital's funds, including the restricted endowment fund. Continental Bank settled the claim brought against it by the Illinois Attorney General. Based on that settlement agreement, the trial court dismissed Foster's cross-claim, finding that it was barred under the Illinois Contribution Act (Ill. Rev. Stat. 1987, ch. 70, par. 302). Foster appeals. We affirm.

The Illinois Attorney General's amended complaint alleged the following facts. In 1977, a private donor gave $500,000 to Community Hospital. The donation was specified as a restricted endowment fund, i.e., the principal of the fund could not be expended by the Hospital

on a current basis. (See Ill. Rev. Stat. 1977, ch. 32, par. 1102.01.) A few years after the donation, Community Hospital deposited a number of its accounts, including the restricted endowment fund, with Continental Bank. Thereafter Community Hospital appointed Continental Bank as its agent pursuant to the terms of an "Investment Advisory Account" agreement (hereinafter the Advisory Agreement) with regard to the funds deposited with Continental Bank, including the restricted endowment fund.

Shortly thereafter, and at the alleged inducement of Continental Bank, Community Hospital pledged the entire restricted endowment fund as collateral for a $250,000 loan it received from Continental Bank. Approximately four months later, Community Hospital defaulted on the loan and the Bank set off the obligation and accrued interest from the restricted endowment fund. Thereafter Continental Bank allowed transfer of the remainder of the restricted endowment fund to Community Hospital's general fund, where the monies were eventually dissipated.

On April 16, 1984, the Illinois Attorney General filed an amended complaint based upon the dissipation of the restricted endowment fund. The complaint contained the following allegations pertinent to this appeal:

Count I: breach of fiduciary duty by Community Hospital and its Board of Directors (including Foster), both individually and in their capacities as officers and directors, for failing to preserve the restricted endowment fund principal;

Count II: breach of statutory duties (Ill. Rev. Stat. 1983, ch. 17, pars. 2004 to 2007, 2009, 2011) by Continental Bank for its participation in Community Hospital's dissipation of the restricted endowment fund;

Count III: breach of fiduciary duty by Continental Bank with respect to dissipation of the restricted endowment fund, based upon the Bank's Advisory Agreement with Community Hospital; and

Count V: trustee mismanagement, waste, and fraud by Community Hospital and its Board of Directors (including Foster), both individually and as directors and officers of the Hospital, with respect to the restricted endowment fund.

Continental answered the complaint and denied all relevant factual allegations pertaining to it. Foster also answered the complaint, denying all relevant factual allegations pertaining to him, and filed, *inter alia*, a cross-claim against Continental Bank.

Approximately three years after its amended complaint was filed,

the Illinois Attorney General agreed to dismiss those counts of the complaint directed against Continental Bank in exchange for Continental Bank's payment of $8,000 to the Hospital. The trial court found the agreement was entered into in good faith in accordance with the Illinois Contribution Act and entered an order that approved the settlement agreement. Thereafter Continental Bank filed a section 2—619 motion (Ill. Rev. Stat. 1987, ch. 110, par. 2—619) to dismiss Foster's cross-claim against it on the ground that the cross-claim was barred under the Illinois Contribution Act by the court-approved settlement agreement between Continental Bank and the Illinois Attorney General. Following briefing and oral argument on the parties' respective positions, the court allowed Continental's motion and dismissed Foster's cross-claim with prejudice. Foster timely appeals from this ruling.

In a supplemental brief filed with this court, Foster acknowledges that he has entered into a settlement agreement with respect to the claims filed against him by the Illinois Attorney General. According to Foster's supplemental brief, "Foster's settlement with the [Illinois Attorney General] required that Foster give up certain rights, as opposed to money."

Based upon the briefs filed by Foster with this court, it is our opinion that Foster's arguments on appeal are, in substance, that his cross-claim seeks three separate remedies from Continental Bank: contribution, implied indemnity, and monetary damages. The Bank contends that Foster's cross-claim seeks only contribution from the Bank, and that Foster's arguments on appeal are an attempt to amend and enlarge the scope of the pleading filed by Foster in the trial court. (See Ill. Rev. Stat. 1987, ch. 110, par. 2—603(b) (separate legal theories and remedies should be separately alleged in pleadings).) For complete analysis of the parties' arguments in this cause, we will assume *arguendo* that Foster's cross-claim seeks the three separate remedies for which he argues in this appeal.

## I. CONTRIBUTION

Foster initially asserts in his brief that his cross-claim seeks "contribution for amounts that he could have been required to pay to the [Illinois Attorney General] in the underlying cause of action." Apparently in anticipation of the Bank's renewal of its argument that his cross-claim is governed by the Illinois Contribution Act (Ill. Rev. Stat. 1987, ch. 70, pars. 301 through 305), which argument the Bank successfully addressed to the trial court, Foster's brief thereafter recognizes that, with respect to the Illinois Contribution Act, "[t]o the ex-

tent that Foster could have been required to restore [the endowment] fund [] after settlement by Continental Bank, Foster would arguably have been barred from seeking contribution from Continental Bank."

We consider this latter statement by Foster as an acknowledgment that, because of the Bank's settlement with the Illinois Attorney General, Foster's cross-claim cannot seek contribution from the Bank for any amounts which Foster might have been liable to pay to replenish the restricted endowment fund. In addition, if Foster has not conceded his inability to seek contribution from the Bank "for amounts that he could have been required to pay to the [Illinois Attorney General] in the underlying cause of action," we nevertheless conclude that Foster cannot seek contribution from the Bank, for two reasons: (1) Foster and the Bank are not alleged to be "liable in tort" in the Illinois Attorney General's complaint; and (2) even if Foster and the Bank were alleged to be "liable in tort" in the Illinois Attorney General's complaint, the Bank's settlement agreement with the Illinois Attorney General would shield the Bank from any contribution liability to Foster.

■■ ■ The Illinois Contribution Act states in pertinent part that "where 2 or more persons are subject to liability in tort arising out of the same injury to person or property, *** there is a right of contribution among them, even though judgment has not been entered against any or all of them." (Ill. Rev. Stat. 1987, ch. 70, par. 302(a).) As the Act plainly states, contribution is permitted between parties who are both subject to liability in tort. The Illinois Supreme Court has also stated that the purpose of contribution is to "distribute[] the [plaintiff's] loss among tortfeasors by requiring each to pay a proportionate share based on the relative fault of the parties. [Citation.]" *Frazer v. A.F. Munsterman, Inc.* (1988), 123 Ill. 2d 245, 256, 527 N.E.2d 1248; see also, *e.g.*, *Gerill Corp. v. Jack L. Hargrove Builders, Inc.* (1989), 128 Ill. 2d 179, 538 N.E.2d 530; *Doyle v. Rhodes* (1984), 101 Ill. 2d 1, 461 N.E.2d 382; *Skinner v. Reed-Prentice Division Package Machinery Co.* (1977), 70 Ill. 2d 1, 374 N.E.2d 437.

■ Because of the requirement stated in Illinois Supreme Court decisions and the Contribution Act itself that the parties be "subject to liability in tort arising out of the same injury to person or property," it has been held that, if the parties are not both subject to liability in tort for the plaintiff's injuries at issue in the underlying action, there is no right of contribution between those parties. See *Dixon v. Northwestern Publishing Co.* (1988), 166 Ill. App. 3d 745, 520 N.E.2d 932, citing *Jodelis v. Harris* (1987), 118 Ill. 2d 482, 517 N.E.2d 1055; see also *Hopkins v. Powers* (1986), 113 Ill. 2d 206, 497

N.E.2d 757; *J.M. Krejci Co. v. St. Francis Hospital* (1986), 148 Ill. App. 3d 396, 499 N.E.2d 622.

A review of the Illinois Attorney General's complaint reveals that neither Foster nor the Bank is alleged to be "liable in tort" for dissipation of the restricted endowment fund. Count I of the complaint, directed against both the Bank and Foster, alleges that each breached a fiduciary duty by allowing dissipation of the restricted endowment fund. Count V, directed against both the Bank and Foster, alleges that each committed acts of trustee mismanagement, waste and fraud with respect to the dissipation of the restricted endowment fund; these allegations are also based on breach of fiduciary duty. See, *e.g., Buehle v. Chicago Board of Options Exchange, Inc.* (1988), 170 Ill. App. 3d 65, 523 N.E.2d 1276.

■■ However, breach of fiduciary duty is not a tort under Illinois precedent. In *Kinzer v. City of Chicago* (1989), 128 Ill. 2d 437, 445, 539 N.E.2d 1216, the Illinois Supreme Court rejected an argument that "breach of fiduciary duty is a tort (Restatement (Second) of Torts §874 (1979))." The court stated that it "has not accepted the Restatement (Second) of Torts view but has regarded breach of fiduciary duty as controlled by the substantive laws of agency, contract [citations] and equity [citation]." (128 Ill. 2d at 445.) Since the counts of the complaint directed against both Foster and the Bank allege causes of action that are not tort claims, Foster and the Bank are not alleged to be "liable in tort" in the Illinois Attorney General's complaint, and Foster therefore cannot seek contribution from the Bank "for amounts that he could have been required to pay to the [Illinois Attorney General] in the underlying cause of action."

■ The Bank responds that an action for breach of fiduciary duty, although not an action in tort in *Kinzer*, is nevertheless governed by the Contribution Act. To support this argument, the Bank notes that the question in *Kinzer* involved application of the Illinois Governmental Tort Immunity Act to the plaintiff's claims. The court determined that the Tort Immunity Act did not apply to the plaintiff's claims because those claims alleged breach of a fiduciary duty, which, the court held, are not actions in tort. We can perceive no sound reason to draw the distinction that breach of fiduciary duty is not a tort for applicability of the Tort Immunity Act, but is a tort for purposes of the Contribution Act, and the Bank has advanced no basis for so doing. Based upon *Kinzer*, we determine that an action for breach of fiduciary duty is not a "tort" for purposes of the Illinois Contribution Act. See also *Hopkins v. Powers*, 113 Ill. 2d 206 (dramshop action not tort claim under Contribution Act).

The Bank also argues that count II of the Illinois Attorney General's suit against the Bank charged the Bank with tort liability for violations of the Bank's statutory duties. As a result, the Bank maintains, Foster's cross-claim is governed by the Illinois Contribution Act. To support this argument, the Bank cites to *Cirilo's, Inc. v. Gleeson, Sklar & Sawyers* (1987), 154 Ill. App. 3d 494, 507 N.E.2d 81. In *Cirilo's*, the court determined that a bank's alleged breach of statutory duties with respect to the handling of depositor funds amounted to allegedly tortious conduct and applied the Contribution Act to a third-party claim. The statutory duties at issue in *Cirilo's* were similar to those alleged in the Illinois Attorney General's complaint here in count II directed against Continental Bank. However, we note that the *Cirilo's* court cited to no precedent to support its conclusion that the bank's breach of statutory duties amounted to tortious conduct.

We need not and do not decide whether the *Cirilo's* court's reasoning is properly applied to the case at bar. Assuming, *arguendo*, based on *Cirilo's*, that count II of the Illinois Attorney General's complaint against the Bank does state a tort claim, the mere presence of that tort claim would not permit Foster's recovery of contribution from the Bank. As noted above, it has been held that the Illinois Contribution Act requires that both parties be liable in tort in order to permit contribution between them. (See Ill. Rev. Stat. 1987, ch. 70, par. 302(a); *Dixon*, 166 Ill. App. 3d 745, citing *Jodelis*, 118 Ill. 2d 482.) The Illinois Attorney General's complaint does not contain allegations amounting to a tort claim against Foster, since counts I and V, directed against Foster, allege that Foster's conduct amounted to a breach of fiduciary duty. Although the Illinois Supreme Court has recognized that *tort* theories of recovery alleged with respect to various defendants need not be identical in order to permit contribution among those defendants (see, *e.g.*, *Frazer v. A.F. Munsterman, Inc.* (1988), 123 Ill. 2d 245), neither the Bank nor Foster has cited to this court any precedent regarding the application of the Contribution Act when a party who is allegedly liable for a non-tort seeks contribution from a second party who is allegedly liable for a tort. Consequently, we do not consider that question here.

If the Contribution Act were applicable to Foster's cross-claim against the Bank, the Bank's settlement with the Illinois Attorney General would bar Foster's recovery in contribution from the Bank. (See Ill. Rev. Stat. 1987, ch. 70, par. 302(d) (joint tortfeasor who settles with claimant is discharged from all liability for contribution to any other joint tortfeasor).) Also, in view of Foster's admission that

he has entered into a settlement agreement with the Illinois Attorney General in which Foster is "required [to] give up certain rights, as opposed to money," we question in what respect Foster could obtain contribution when he has no obligation to make a monetary payment in the underlying dispute.

For these reasons, we conclude that Foster's cross-claim was properly dismissed by the trial court to the extent that the cross-claim sought contribution from the Bank, as stated in Foster's brief, "for amounts that he could have been required to pay to the [Illinois Attorney General] in the underlying cause of action."

## II. IMPLIED INDEMNIFICATION

Foster also argues that his cross-claim seeks implied indemnification from the Bank. Foster asserts two grounds for such indemnification: (1) implied indemnity based on tort liability; and (2) implied indemnity based on non-tort liability. We consider each separately.

## A. IMPLIED INDEMNITY BASED ON TORT LIABILITY

■■ ■ "Indemnity allows a defendant who satisfies a judgment for which he and another tortfeasor or tortfeasors are jointly and severally liable to recover from the other tortfeasor or tortfeasors the entire amount he was obligated to pay. [Citations.] To have the right to indemnity there must have been a pre-tort relationship between the guilty parties and a qualitative difference in their conduct in the occurrence. [Citations.]" (*Frazer*, 123 Ill. 2d at 254-55.) Citing section 886B, comment *c* of the Restatement (Second) of Torts, the Illinois Supreme Court recently reiterated its earlier observation that " '[i]mplied indemnity' is based on principles of restitution: 'a contract implied in law arising from the legal obligation of an indemnitee to satisfy liability caused by actions of his indemnitor.' " *Frazer*, 123 Ill. 2d at 255, quoting *Allison v. Shell Oil Co.* (1986), 113 Ill. 2d 26, 28.

In light of *Allison* and *Frazer*, it is unclear whether section 886B of the Restatement (Second) of Torts properly states Illinois' specific limitations upon implied tort indemnity. Nevertheless, it is clear that, under Illinois Supreme Court precedent, implied tort liability indemnification requires a pre-tort relationship between the parties and a qualitative distinction in their conduct giving rise to the underlying plaintiff's injuries. (*Frazer*, 123 Ill. 2d 245; *Allison*, 113 Ill. 2d 26.) Section 886B also does, in substance, appear to require a pre-tort relationship between the parties and a qualitative distinction in their conduct.

■ As a result, we do not consider Foster's specific arguments regarding the applicability of particular provisions of section 886B of

the Restatement (Second) of Torts, but limit our analysis to whether the record reveals that (1) Foster and the Bank had a pre-tort relationship, and (2) there was a qualitative distinction in their conduct as alleged in the Illinois Attorney General's complaint. (*Frazer*, 123 Ill. 2d 245; *Allison*, 113 Ill. 2d 26.) We find that neither of these requirements is satisfied in the record before us. Also, as noted previously with respect to Foster's contribution arguments, in view of Foster's admission that he has entered into a settlement agreement with the Illinois Attorney General in which Foster is "required [to] give up certain rights, as opposed to money," we question in what respect Foster could obtain implied indemnity from the Bank when Foster has no obligation to make a monetary payment in the underlying dispute. For these reasons, we conclude that Foster's cross-claim, to the extent that it sought implied indemnity from the Bank based on tort liability of Foster and the Bank in the Illinois Attorney General's underlying complaint, was properly dismissed by the trial court.

### B. IMPLIED INDEMNITY FOR NON-TORT LIABILITY

Foster also seeks implied indemnification from the Bank based on the Bank's alleged breach of fiduciary duties owed by the Bank to Foster. We note that although Illinois Supreme Court decisions cited above (*e.g.*, *Frazer*, 123 Ill. 2d 245; *Allison*, 113 Ill. 2d 26) have limited the scope of implied tort liability indemnification, nothing in these decisions has been held to eliminate the viability of implied non-tort indemnification in this State. (See, *e.g.*, *Carrillo v. Jam Productions, Ltd.* (1988), 173 Ill. App. 3d 693, 527 N.E.2d 964; *Case Prestressing Corp. v. Chicago College of Osteopathic Medicine* (1983), 118 Ill. App. 3d 782, 455 N.E.2d 811; *Chicago College of Osteopathic Medicine v. George A. Fuller Co.* (7th Cir. 1983), 719 F.2d 1335.) We therefore consider whether Foster's cross-claim is sufficient to state a claim for implied indemnification from the Bank for breach of fiduciary duty. As noted above, the Illinois Supreme Court stated in *Kinzer* that "breach of fiduciary duty [is] controlled by the substantive laws of agency, contract [citations] and equity [citation]." *Kinzer*, 128 Ill. 2d at 445.

Foster argues that his cross-claim stated a cause of action for breach of fiduciary duty based on the Bank's alleged breach of the Advisory Agreement it entered into with the Hospital. However, the cross-claim was legally insufficient as an action for breach of fiduciary duty based on principles of contract, since Foster was neither a party to the Advisory Agreement between Continental Bank and the Hospital, nor was he an intended third-party beneficiary of the Advisory Agreement.

■■■ "[T]he law regarding third-party beneficiaries is well established. A third-party beneficiary may sue for breach of a contract made for his benefit. (*Carson Pirie Scott & Co. v. Parrett* (1931), 346 Ill. 252, 257.) A third party may only sue for breach of contract, however, if the contract was entered into for the party's direct benefit; if the third-party's benefit is merely incidental, he has no right of recovery on the contract. (*Parrett*, 346 Ill. at 257; *People ex rel. Resnik v. Curtis & Davis, Architects & Planners, Inc.* (1980), 78 Ill. 2d 381, 385.) Whether a third party is a direct beneficiary depends on the intention of the parties, which must 'be gleaned from a consideration of all of the contract and the circumstances surrounding the parties at the time of its execution.' *Parrett*, 346 Ill. at 258." *Alaniz v. Schal Associates* (1988), 175 Ill. App. 3d 310, 312, 529 N.E.2d 832.

The Bank's Advisory Agreement with the Hospital was adopted pursuant to resolution of the board of directors of the Hospital. In the Agreement, the Hospital, referred to as the "Company," appointed the Bank "as its agent to care for and manage the money, securities, other property and interests in property from time to time held for this account." The Agreement "authorizes and directs" the Bank to perform certain services specified therein. These services were to "regularly review the securities and other assets held in this account, recommend to the Company the retention, sale or exchange thereof, advise the Company of [the Bank's] recommendations for investment or reinvestments, and advise the Company of other investment actions which appear to [the Bank] to be desirable, taking into consideration the [Hospital's] investment objectives." The Agreement further specified that the Bank "shall purchase, sell or change investments, invest principal cash and accept or deliver cash and securities only as the Company from time to time directs or approves."

Foster argues that the primary, and indeed the only, purpose of the relationship created by the Advisory Agreement was to benefit or advise the board of directors of the Hospital, who were the true recipients of the advice provided by the Bank under the Advisory Agreement. Foster asserts that the Advisory Agreement implies a benefit to the Hospital's board of directors; this benefit, Foster argues, was sound and accurate advice to the board members that would prevent the board members' exposure to personal liability for the mishandling of the Hospital's funds. We disagree.

■■■ As a review of the Advisory Agreement indicates, the terms of the Advisory Agreement were intended by the Bank and the Hospital to directly benefit the Hospital in investment and management of Hospital assets. As Foster concedes, the Advisory Agreement con-

tains no express language to show that the Bank and the Hospital intended the contract to directly benefit the Hospital's board of directors. The benefit to the board of directors of sound and accurate advice to avoid personal liability is an incidental benefit of the contract between Continental Bank and the Hospital. As stated by the courts in both *Alaniz* and *Kohlmeier v. Shelter Insurance Co.* (1988), 170 Ill. App. 3d 643, 525 N.E.2d 94, " 'As people usually stipulate for themselves, and not for third persons, a strong presumption obtains in any given case that such was their intention, and that the implication to overcome that presumption must be so strong as to amount practically to an express declaration.' " (*Alaniz*, 175 Ill. App. 3d at 313, and *Kohlmeier*, 170 Ill. App. 3d at 653, both quoting *Metro East Sanitary District v. Village of Sauget* (1985), 131 Ill. App. 3d 653, 657-58.) The record in the case at bar contains nothing to overcome the presumption that the Advisory Agreement was intended for the direct benefit of the Hospital and Continental Bank. The incidental benefit of sound and accurate investment advice to Foster, as a member of the board of directors of the Hospital, is insufficient to accord Foster the right to sue on the Advisory Agreement as an intended third-party beneficiary. "[T]he liability affirmatively arising from the contract language cannot be extended or enlarged on the sole ground that the situation and the circumstances demand further or other liability." *Illinois Housing Development Authority v. Sjostrom & Sons* (1982), 105 Ill. App. 3d 247, 258, 433 N.E.2d 1350.

We further determine that Foster's cross-claim is legally insufficient to state a claim for implied indemnification for breach of fiduciary duty based upon the substantive law of agency. "Traditionally, an agent is not liable for injuries to third persons resulting solely from a mere breach of duty which he owes to his principal, unless at the same time the agent owes a separate duty to the third party." (*Bescor, Inc. v. Chicago Title & Trust Co.* (1983), 113 Ill. App. 3d 65, 68, 446 N.E.2d 1209, citing Restatement (Second) of Agency §352 (1957).) Foster argues that section 354 of the Restatement (Second) of Agency applies to this case; section 354 provides that an agent who undertakes to act for his principal for the protection of another is subject to liability to the other for harm that results caused by reliance of the other upon the agent, so long as the failure to act creates an unreasonable risk of injury and the agent should so realize. However, it is clear from the Advisory Agreement that the Bank's role was to act as agent of the Hospital, and the Agreement so states by its express terms. Furthermore, as stated more fully above with respect to Foster's argument that he was a third-party beneficiary of the Agree-

ment, the Agreement's terms clearly indicate that the Bank's duty was to the Hospital, and there is nothing in the Agreement to show that the Bank's duty was to also protect the individual members of the board of directors from personal liability for malfeasance.

Nevertheless, Foster asserts that since the Hospital acts through its officers and board members, the board members were the true "consumers" of the Bank's advice, and thus the Bank owed a fiduciary duty to the individual members of the board of directors of the Hospital. To support this argument, Foster relies upon *Hooper v. Barnett Bank of West Florida* (Fla. App. 1985), 474 So. 2d 1253, *Tokarz v. Frontier Federal Savings & Loan Association* (1982), 33 Wash. App. 456, 656 P.2d 1089, *Hutson v. Wenatchee Federal Savings & Loan Association* (1978), 22 Wash. App. 91, 588 P.2d 1192, and *Stewart v. Phoenix National Bank* (1937), 49 Ariz. 34, 64 P.2d 101. These decisions recognize the principle that a bank may be held to a fiduciary standard in its dealing with bank customers or depositors "where a bank holds itself out as a financial advisor or otherwise has reason to know (has actual or constructive knowledge) that a depositor is reposing trust and confidence in the bank. [Citations.]" *Hooper v. Barnett Bank*, 474 So. 2d at 1257.

■ This legal principle finds no factual application in the record of the case at bar. Foster alleges no facts to show that Continental Bank assumed any additional obligation to counsel *individual* board members with respect to investment of Hospital assets. Foster alleges no facts to show that the Bank held itself out as a financial advisor to serve each board member individually, or to counsel individual board members with respect to whether certain investment activity would subject the individual board members to personal liability. Foster alleges no facts to demonstrate that the Bank had actual or constructive knowledge that Foster reposed trust and confidence in the Bank to advise Foster whenever it might appear that certain investment activity could expose Foster to personal liability.

Based on this reasoning, we find Foster's agency arguments insufficient ground to reverse the trial court's dismissal of his cross-claim against Continental Bank, to the extent that the cross-claim sought implied indemnification from the Bank for breach of fiduciary duty based on agency principles.

■ Having determined that Foster's cross-claim for implied indemnification based upon breach of fiduciary duty cannot be supported under the substantive laws of contract or agency, we turn to an analysis of whether the cross-claim can be sustained under equitable principles. (See *Kinzer*, 128 Ill. 2d at 445.) Initially Foster argues

that his pleading is sufficient to state a claim for implied indemnification based upon restitutionary principles of quasi-contract. To support this argument, Foster relies upon section 76 of the Restatement of Restitution, which states:

"A person who, in whole or in part, has discharged a duty which is owed to him but which as between himself and another should have been discharged by the other, is entitled to indemnity from the other, unless the payor is barred by the wrongful nature of his conduct." Restatement of Restitution §76, at 230 (1937).

Foster cites to no Illinois precedent adopting this provision, and we do not decide herein whether it accurately reflects Illinois law. Assuming *arguendo* the viability of section 76 of the Restatement of Restitution under Illinois law, the section is nevertheless inapplicable to the facts of this case. The Illinois Attorney General's complaint against Foster alleges that Foster himself undertook actions that were "wrongful." Thus Foster cannot benefit from section 76, which states that its principles are not applicable where the "payor is barred by the wrongful nature of his conduct." (See also *Heinrich v. Peabody International Corp.* (1987), 117 Ill. 2d 162, 520 N.E.2d 889 (matter should have been raised as affirmative defense rather than basis for third-party action).) Also, as noted previously with respect to Foster's contribution arguments, in view of Foster's admission that he has entered into a settlement agreement with the Illinois Attorney General in which Foster is "required [to] give up certain rights, as opposed to money," we question in what respect Foster could obtain implied indemnity from the Bank when Foster has no obligation to make a monetary payment in the underlying dispute.

The cases cited by Foster with respect to implied indemnification based on non-tort liability are inapposite to the instant cause. Each of the decisions to which Foster refers relied upon sequential breaches of contract, *i.e.*, where A breached its contract with B, causing B to breach B's contract with C, resulting in A's duty to indemnify B for B's liability to C. (See *Carrillo v. Jam Productions, Ltd.* (1988), 173 Ill. App. 3d 693, 527 N.E.2d 964; *Case Prestressing Corp. v. Chicago College of Osteopathic Medicine* (1983), 118 Ill. App. 3d 782, 455 N.E.2d 811; *Chicago College of Osteopathic Medicine v. George A. Fuller Co.* (7th Cir. 1983), 719 F.2d 1335.) As stated more fully above, under the facts appearing in this record, the Bank had neither a contract with Foster, a fiduciary duty to Foster, nor an agency relationship with Foster. Consequently, the Bank had no duty to indemnify Foster under the principles recognized in *Carrillo, Case Prestressing,*

or *Chicago College of Osteopathic Medicine.*

### III. SEPARATE CAUSE OF ACTION
### FOR DAMAGES TO FOSTER'S REPUTATION AND BUSINESS

Foster argues that his cross-claim seeks not only contribution or implied indemnification for his liability, if any, to the Illinois Attorney General in the underlying dispute, but that his cross-claim also alleges "a separate cause of action against Continental Bank, arising from a duty of Continental Bank to Foster *** separate from [the Bank's] duty to [the Illinois Attorney General]."

The Bank maintains that Foster's cross-claim, to the extent that it alleges a "separate cause of action against Continental Bank," is nevertheless governed by the Contribution Act. Foster responds that the Contribution Act is inapplicable to his cross-claim to the extent that it stated a separate cause of action against the Bank. He asserts that the Act is inapplicable because his injuries are "separate and distinct" from those forming the basis of the Illinois Attorney General's underlying complaint and the Act explicitly states that contribution applies where "2 or more persons are subject to liability in tort arising out of the same injury to person or property." Ill. Rev. Stat. 1987, ch. 70, par. 302(a).

We need not and do not decide whether Foster's cross-claim is insufficient on the basis asserted by the Bank, or whether, as Foster argues, the Contribution Act is inapplicable to a cross-claim seeking damages for injuries suffered by a third-party plaintiff that are "separate and distinct" from the injuries suffered by the plaintiff in the underlying suit. Assuming *arguendo* that the Contribution Act does not apply, Foster's cross-claim is nevertheless insufficient to state a claim on the merits advanced by Foster, *i.e.*, breach of fiduciary duty or breach of a tort duty owed by the Bank to Foster.

■■■ Foster asserts that his cross-claim seeks damages that he has sustained to "his reputation and business as a result of Continental Bank's breach of its fiduciary duty to him." As noted above, however, Foster's cross-claim is insufficient to state a claim for breach of a fiduciary duty. Foster also asserts that his cross-claim sought damages arising from the Bank's breach of a tort duty that the Bank owed to Foster. Citing *Pelham v. Griesheimer* (1982), 92 Ill. 2d 13, 440 N.E.2d 96, Foster maintains that such a tort duty arises when "the primary purpose of the relationship between the actor and the one directing the actions was to benefit or influence the third party." Foster argues that this negligence principle applies to the case at bar, because the primary purpose of the Advisory Agreement between the

Hospital and the Bank was to influence the decisions of the members of the Hospital's board of directors, including Foster. As noted above, however, the primary purpose of the Advisory Agreement was not to protect the interests of the board of directors in the event of personal liability for malfeasance in handling Hospital funds, but rather to protect the interests of the Hospital itself in the administration of Hospital funds. Thus the Bank owed Foster no tort duty under the principles recognized in *Pelham*.

For the reasons stated, the order of the circuit court of Cook County is affirmed.

Affirmed.

JOHNSON, J., concurs.

PRESIDING JUSTICE JIGANTI, dissenting:

I respectfully dissent. The cross-complaint asks that Foster be indemnified from Continental for all amounts which Foster is required to pay as a result of the underlying action filed by the Attorney General in the name of the People of the State of Illinois against Foster. The action by the People against Foster alleges that Foster violated various statutory and common law duties affecting the public's interest in trust funds. Foster's complaint in turn against Continental alleges that he was a member of the Board of Directors of the Community Hospital of Evanston and that the Board of Directors entered into an agreement with Continental. Under that agreement, Continental was to manage trust funds. Continental knew that there were certain assets designated as "restricted for endowment fund." However, Continental allowed the funds to be dissipated in contravention of the restrictions placed on the funds. As a result of Continental's actions, Foster has been made a defendant in the present action and may be required to pay damages.

The right to indemnity is based on the principle that everyone is responsible for his own wrongs and that if another has been called upon to pay damages for which the wrongdoer is primarily responsible, the latter becomes liable to the former. (*Bituminous Casualty Corp. v. American Fidelity & Casualty Co.* (1959), 22 Ill. App. 2d 26, 32, 159 N.E.2d 7, 10.) The principle is variously called restitution, quasi-contract, contract implied in law or assumpsit. The obligation arises not from the agreement of the parties but rather from their relationship. It is an action at law although it is governed by principles of equity. *Beatrice Foods Co. v. Gallagher* (1964), 47 Ill. App. 2d 9,

25, 197 N.E.2d 274, 283. See Restatement of Restitution Part I Introductory Note, at 4 through 10 (1937).

The rule is stated most clearly in section 76 of the Restatement of Restitution:

> "A person who, in whole or in part, has discharged a duty which is owed by him but which as between himself and another should have been discharged by the other, is entitled to indemnity from the other, unless the payor is barred by the wrongful nature of his conduct." (Restatement of Restitution §76, at 230 (1937).)

As comment *b* states, the rule is applicable where two or more persons are subject to a duty to a third person under circumstances that between themselves one should perform the duty rather than the other. (Restatement of Restitution §76, comment *b*, at 230-31 (1937).) In this case, between Continental and Foster it was Continental which undertook the responsibility of Community Hospital to properly manage the account and as between Continental and Foster it was the duty of Continental to perform. Continental, according to the allegations in the complaint, would be unjustly enriched by having been relieved of a liability at the expense of Foster.

Illustration 4 of the Restatement is applicable to this case:

> "4. A statute provides that street car companies shall keep the street between the tracks in repair. A street car company secures a franchise from a town. In laying the track the street car company creates a dangerous condition in the highway, and a third person suffers an injury for which both the town and the company are liable. After giving proper notice to the street car company of the proposed settlement with the third person, the town makes a reasonable settlement to avert threatened suit against it. The town is entitled to reimbursement from the street car company of the amount paid." (Restatement of Restitution §76, illustration 4, at 232 (1937).)

As in the illustration, the hospital and Foster had a duty to the public. Continental and the hospital entered into a contract similar to the franchise in the illustration. Continental breached the contract for which Foster is to be liable. If Foster pays any judgment, he is entitled to reimbursement from Continental for the same reason that the town in the illustration was entitled to reimbursement from the street car company. Accordingly, the cross-complaint should not have been dismissed as it states in action for indemnity.

The majority in addressing section 76 of the Restatement of Restitution says that Foster may not recover from Continental because of

the "wrongful nature" of his conduct. In response, consider the illustration with the street car company. The town was threatened with a suit by the plaintiff because of some wrongful conduct. The town was entitled to reimbursement from the street car company even though its conduct was allegedly wrongful because a statute imposed upon the street car company the duty to keep the tracks in repair. Continental, under the allegations of the complaint, assumed the duty not to dissipate the funds. Foster did not act wrongfully in contracting with Continental to manage the funds of the hospital.

Continental also argues that its motion to dismiss is based on the Contribution Act. (Ill. Rev. Stat. 1987, ch. 70, pars. 301 through 305.) Its position is that they are allegedly joint tortfeasors and that under section 2(d) Continental's settlement discharges Continental from any contribution action by Foster, another tortfeasor. The Contribution Act is based on contribution among joint tortfeasors. The complaint by the People against Foster is based not on tort but rather on the alleged violation of various statutory and common law duties affecting the public interest in trust funds. Continental and Foster are not subject to liability in tort and therefore are not within the purview of section 2(a) of the Act.

For the reasons stated, I would reverse the dismissal.