639 N.E.2d 592 (1994)
266 Ill.App.3d 13
203 Ill.Dec. 272
Carolyn BARNEY, Plaintiff-Appellant,
v.
UNITY PAVING, INC., an Illinois corporation, Dale D. Rodriquez, The Chicago Transit Authority, a municipal corporation, James R. Pruitt, The City of Chicago, a municipal corporation, Defendants,
and
Paschen Contractors, Inc., a Delaware corporation, and Case International Company, an Illinois corporation, Defendants-Appellees.
No. 1-92-0483.
Appellate Court of Illinois, First District, First Division.
June 20, 1994.
Rehearing Denied August 8, 1994.
As Modified August 15, 1994.
*593 Edwin R. McCullough, Chicago, for appellant.
Joyce & Kubasiak, P.C., Chicago (Edward T. Joyce, Vytas P. Ambutas, of counsel), for appellees.

MODIFIED ON DENIAL OF REHEARING
Justice BUCKLEY delivered the opinion of the court:
Plaintiff, Carolyn Barney, filed a four-count second-amended complaint against numerous defendants, including Paschen Contractors, Inc. and Case International, Inc. ("defendants"), to recover for injuries she sustained when a truck operated by an employee of Unity Paving, Inc. ("Unity"), a subcontractor, collided with the rear end of a bus in which plaintiff was riding. Count IV asserted that defendants breached their contract with the City of Chicago ("City") because they failed to require the subcontractor to carry motor vehicle liability insurance. The trial judge granted defendants' motion for summary judgment on the ground that plaintiff was not a third-party beneficiary of the contract between defendants and the City. On appeal, plaintiff contends: (1) that the general contract between the City and defendants obligated defendants to require their subcontractors to have motor vehicle insurance and to furnish a certificate of such insurance to the City before any work was started; and (2) that the trial judge erred in holding that plaintiff was not a third-party beneficiary of the general contract.
*594 In 1983, the City contracted with defendants to straighten out the Lake Shore Drive S-curve. According to the provisions of the general contract between defendants and the City, both the defendants and any subcontractors they hired were required to obtain certain liability insurance prior to the commencement of any work. The relevant portion of the general contract reads as follows:
"104. CONTRACTOR'S INSURANCE
The Contractor shall not commence work under this Contract until he has obtained all insurance required under this section, in the amounts hereinafter specified, and such insurance has been approved by the Commissioner, nor shall the Contractor allow any subcontractor to commence work on his subcontract until all similar insurance required of the subcontractor has been so obtained and approved.
* * * * * *
b. Public Liability and Property Damage Insurance. The Contractor shall carry at all times while executing such work as covered in this Specification and Contract or any mutually agreed upon change or amendment thereof or addition thereto, Public Liability Insurance, being held responsible for all damages the City of Chicago may have to pay to individuals or corporations in consequence of any acts or neglects of said Contractor or any of his employees or any of [sic] subcontractors or his employees, if any, in connection with the work called for by this Contract. * * * This provision shall be construed as requiring the Contractor and any subcontractor who may employ a subcontractor or subcontractors to take out and maintain Contractor's Protective Insurance and Contractor's Contractual Insurance.
The Contractor shall require subcontractors, if any, similarly to take out and maintain insurance of such nature and in such amounts as the Contractor considers necessary to protect himself.
The aforesaid public liability and property damage insurance shall also include indemnity insurance against any and all claims that may arise during the course of the Contract under the provisions of the `Scaffolding Act'.
[The Contractor shall also take out and maintain, during the life of the Contract, Owner's Protective Insurance for the protection of the City of Chicago in the amounts as specified in this Section 220A for Comprehensive Public Liability and Property Damage Insurance.
The City of Chicago and Alfred Benesch & Company, whose personnel will perform construction inspection services on this Project, shall both be named insured in the Owner's Protective Insurance. (Section 220A)].
c. Insurance Covering Special Hazards. The following special hazards shall be covered by the Contractor, or subcontractor, whose work involves the stated special hazards, by rider or riders to the Comprehensive Public Liability and Property Damage Insurance policies herein elsewhere required or by separate policies of insurance, in amounts as specified under Subsection f:
Blasting, Explosion and Collapse, Damage to Underground Utilities, Trucking and Motor Vehicle Operations, And any other Hazards involved in the Work to be performed under the Contract. [Emphasis added.]
d. Copies of Insurance Policies. The contractor shall furnish copies of all insurance policies and/or certificates of insurance. Each policy shall include a provision to the effect that it shall not be subject to cancellation, or reduction in the amounts of its liabilities, or any other material change, until notice thereof has been given in writing to the Commissioner not less than fifteen (15) working days prior to such action."
After defendants and the City entered into this contract for the Lake Shore Drive project, defendants subcontracted to Unity the task of hauling paving material to and from the construction site. According to plaintiff's allegations, on the morning of October 2, 1985, she was traveling to work on Lake Shore Drive in a Chicago Transit Authority ("CTA") bus when a Unity truck driven negligently by a Unity employee crashed into the rear end of the bus causing plaintiff *595 serious injuries. At the time of the accident, Unity did not have motor vehicle liability insurance.
Plaintiff filed a four-count second-amended complaint alleging negligence against Unity (count I), negligence against the CTA (count II), negligence against the City (count III), and breach of contract against defendants (count IV). In count IV, plaintiff asserted that defendants breached their contract with the City because they allowed Unity to commence work on the construction project without providing copies of the required insurance policies and, in fact, without procuring the required insurance. She contends that she has standing to sue on the general contract because as "a person reasonably expected to be subjected to possible injury through said operation of motor vehicles" she was a third-party beneficiary of the contract.
In October 1991, the trial judge bifurcated the trial and thus a trial was had on the first three counts. A jury returned a verdict for $44,000 in favor of plaintiff and against Unity under count I, a verdict in favor of the CTA and against plaintiff under count II, and the trial judge entered a directed verdict in favor of the City under count III. Defendants then filed a motion for summary judgment on count IV. The trial judge granted defendants' motion based upon his conclusion that by no "stretch of the imagination" was plaintiff a third-party beneficiary of the contract between defendants and the City.
Plaintiff then filed this timely appeal.
Plaintiff's first contention on appeal is that the general contract between defendants and the City obligated defendants to require their subcontractors to have motor vehicle insurance and to furnish a certificate of such insurance to the City before any work was started. Defendants do not respond to the merits of this contention, but merely assert that this issue is not before the court because the trial judge did not make a finding on this question.
Summary judgment should only be granted if, after reviewing all the pleadings, affidavits, and other evidence on file in the light most favorable to the nonmovant, it is clear that no material issue of fact exists. (Ill.Rev.Stat.1991, ch. 110, par. 2-1005 (now 735 ILCS 5/2-1005 (West 1992)); Srivastava v. Russell's Barbecue, Inc. (1988), 168 Ill. App.3d 726, 730, 119 Ill.Dec. 562, 565, 523 N.E.2d 30, 33.) When reviewing a trial judge's determination that the movant was entitled to judgment as a matter of law, we conduct a de novo review. (Makowski v. City of Naperville (1993), 249 Ill.App.3d 110, 115, 187 Ill.Dec. at 530, 534, 617 N.E.2d at 1251, 1255.) Consequently, "[i]t is the judgment and not what else may have been said by the lower court that is on appeal." (Makowski, 249 Ill.App.3d at 115, 187 Ill.Dec. at 534, 617 N.E.2d at 1255.) In other words, it is the ruling being reviewed, and not the reasons for the ruling. (Makowski, 249 Ill.App.3d at 115, 187 Ill.Dec. at 534, 617 N.E.2d at 1255.) Thus, the fact that the trial judge in this case failed to make an explicit finding on this question does not preclude us from independently addressing the substance of the issue.
After reviewing the general contract, we agree with plaintiff that the general contract clearly imposed such a contractual obligation. Paragraph 104 of the general contract states that defendants will not allow any subcontractor to commence work on the project until the subcontractor had acquired all required insurance. Subsection b mandates that defendants require their subcontractors to take out and maintain certain insurance. Subsection c provides that the operation of motor vehicles is a "special hazard" and that the defendants or the subcontractor, whoever's work involves the "special hazard," must acquire motor vehicle insurance. Subsection d requires that the defendants provide the City with "copies of all insurance policies or certificates of insurance." In our opinion, section 104 obligates the defendants to require its subcontractors to have motor vehicle insurance.
Additionally, we note that during the oral argument on the motion for summary judgment, defendants' attorney conceded that "[t]he city's contracts specifically required the subcontractor or, any subcontractor that may be hired to carry the insurance." It is a firmly established principle of contract interpretation that courts should give great weight to the parties' interpretation *596 of the contract because the parties are in the best position to know what was intended by the language employed. (Schneider v. Neubert (1923), 308 Ill. 40, 43, 139 N.E. 84, 85; Chicago & Northwestern R.R. Co. v. Peoria & Pekin Union R.R. Co. (1977), 46 Ill.App.3d 95, 101, 4 Ill.Dec. 468, 471, 360 N.E.2d 404, 407.) According to defendants' own admission during oral argument on the summary judgment motion, they breached their contractual obligation to ensure that their subcontractors possessed the required insurance.
Plaintiff's second contention on appeal is that the trial judge erred in holding that she was not a third-party beneficiary of the general contract between defendants and the City. Plaintiff asserts that the purpose of the requirement in the general contract that defendants require their subcontractors to have insurance is to protect members of the public such as plaintiff who might be injured by subcontractors. Defendants, on the other hand, argue that "the insurance provisions are for the direct benefit of [defendants] and the City of Chicago to insulate them from loss for claims such as plaintiff's i.e., accidents caused by Unity Paving trucks."
The general rule governing the right of a third party to sue on a contract to which he was not a party was set forth with particular clarity in Carson Pirie Scott & Co. v. Parrett (1931), 346 Ill. 252, 178 N.E. 498. The Parrett Court explained:
"The rule is settled in this State that if a contract be entered into for a direct benefit of a third person not a party thereto, such third person may sue for breach thereof. The test is whether the benefit to the third person is direct to him or is but an incidental benefit to him arising from the contract. If direct he may sue on the contract; if incidental he has no right of recovery thereon." (Parrett, 346 Ill. at 257-58, 178 N.E. at 501.)
Although this rule is undisputed, it must be applied on a case by case basis because the intention of the parties is controlling and their intent can only be gleaned from a consideration of the particular contract as a whole and the circumstances surrounding the parties at the time of the contract's execution. (Parrett, 346 Ill. at 258, 178 N.E. at 501.) Additionally, in Illinois, there is a strong presumption that the parties to a contract intend that the contract's provisions apply only to them, and not to third parties. (Ball Corp. v. Bohlin Building Corp. (1989), 187 Ill.App.3d 175, 177, 134 Ill.Dec. 823, 824, 543 N.E.2d 106, 107.) The fact that the contracting parties may "know, expect, or even intend that others will benefit" from their agreement is not enough to overcome the presumption that the contract was intended solely for the direct benefit of the parties. Waterford Condominium Association v. Dunbar Corp. (1982), 104 Ill.App.3d 371, 373, 60 Ill.Dec. 110, 112, 432 N.E.2d 1009, 1011.
In order for a third party to have a right to sue, "[t]he contract must be undertaken for the plaintiff's direct benefit and the contract itself must affirmatively make this intention clear." (Waterford, 104 Ill.App.3d at 373, 60 Ill.Dec. at 112, 432 N.E.2d at 1011.) If the intent to benefit others is not explicitly provided for in the contract, its implication at least "must be so strong as to be practically an express declaration." (Ball, 187 Ill.App.3d at 177, 134 Ill.Dec. at 824, 543 N.E.2d at 107.) Liability will not be "extended or enlarged on the ground, alone, that the situation and circumstances of the parties justify or demand further or other liability." Parrett, 346 Ill. at 257-58, 178 N.E. at 501.
In our opinion, the contract as a whole clearly shows that the intent of the City in requiring that defendants have all their subcontractors carry certain insurance was solely to set forth the parties respective responsibilities and to protect the City from possible loss as a result of a subcontractor's negligence. Section 104(b) provides that defendants must carry Public Liability Insurance for the purpose of "being held responsible for all damages the City may have to pay to individuals" as a result of negligent acts of defendants, their subcontractors or any of their respective employees. Section 104(b) further provides that defendants must require their subcontractors to carry similar insurance "in such amounts as the Contractor considers necessary to protect himself." Section 104(b) also requires defendants to *597 take out Owner's Protective Insurance with the City as the named insured "for the protection of the City of Chicago" and subsection c mandates that either defendants or its subcontractors must carry insurance to protect against certain "special hazards" including "trucking and motor vehicle operations." The express language of these provisions shows that the City was primarily concerned with protecting itself from loss in the event that defendants or their subcontractors negligently injured third parties while performing their obligations under the contract. As we noted above, if the intent to benefit third parties is not explicitly provided for in the contract, its implication at least "must be so strong as to be practically an express declaration." (Ball, 187 Ill.App.3d at 177, 134 Ill.Dec. at 824, 543 N.E.2d at 107.) We can find no language in the contract which provides or even implies that the intent behind the insurance requirements was to directly benefit the public.
Plaintiff argues, however, that defendants should be held responsible under the contract because it was foreseeable that members of the public would possibly be injured as a result of the operation of motor vehicles by Unity, the subcontractor, and thus the insurance requirements would benefit the public. Simply because the contracting parties may have known, expected or even intended that third parties might benefit from their agreement does not mean that the contract was intended for the direct benefit of others. (Waterford, 104 Ill.App.3d at 373, 60 Ill.Dec. at 112, 432 N.E.2d at 1011.) It is the intent of the parties as manifested in their contract which controls whether another is a direct intended third-party beneficiary. (Ball, 187 Ill.App.3d at 177, 134 Ill.Dec. at 824, 543 N.E.2d at 107.) Only direct beneficiaries have rights against the promisor and incidental beneficiaries have no rights on the contract. Ball, 187 Ill.App.3d at 177, 134 Ill.Dec. at 824, 543 N.E.2d at 107.
Obviously, the parties knew that the public would benefit by the insurance requirement in the sense that any injured person would be assured recovery for any loss caused by Unity's negligence. As plaintiff points out, "it cannot be disputed that, if the Contract had not been breached, there would be funds held by an insurance company subject to garnishment by the [plaintiff], as a judgment-creditor of the subcontractor." However, even absent the provisions requiring insurance, plaintiff would have been entitled to recover in negligence from any party responsible for her loss. The benefit to plaintiff of the insurance provisions is incidental compared to the direct intended benefit realized by the City as a result of the defendants' contractual duty to be responsible for the entire financial loss. The fact that Unity may lack the funds to pay plaintiff on her judgment is unfortunate, but the law cannot extend the liability of the promisor on the contract solely on the ground "that the situation and circumstances of the parties justify or demand further or other liability." Parrett, 346 Ill. at 257-58, 178 N.E. at 501.
Plaintiff cites the Texas case of James Stewart & Co. v. Law (1950), 149 Tex. 392, 233 S.W.2d 558, in support of her argument that the insurance requirement was intended for the direct benefit of members of the public who might be injured by the negligent conduct of defendants' subcontractors. The Texas court held that a third party injured by the negligence of a subcontractor could recover from the general contractor for breach of a construction contract which mandated that the general contractor require that its subcontractors maintain certain liability insurance. The holding of this Texas case supports plaintiff's claim and appears to be directly on point. However, the reasoning of the Texas court in arriving at this conclusion is inconsistent with Illinois law on third-party beneficiary claims. See Alaniz v. Schal Association (1988), 175 Ill.App.3d 310, 314, 124 Ill.Dec. 851, 854, 529 N.E.2d 832, 835.
The Texas court reasoned that, although the motive of the promisee may have been "only the selfish one to protect itself and not that of benefitting third parties," the law presumes that parties to a contract "intend the consequences of its performance." (Stewart, 149 Tex. at 399, 233 S.W.2d at 561-62.) Since the consequence of requiring the contractor to require the subcontractor to maintain liability insurance would have been *598 to provide a method by which injured parties could be paid by insurers, the Texas court concluded that plaintiff was an intended beneficiary. (Stewart, 149 Tex. at 399, 233 S.W.2d at 562.) However, although the Texas court determined that the plaintiff was an intended beneficiary, it made no distinction "between direct and incidental benefits as is required by Illinois law." (Alaniz, 175 Ill. App.3d at 314, 124 Ill.Dec. at 854, 529 N.E.2d at 835.) The Texas court went no further than to presume that parties to a contract intend the consequences of the contract's performance. This may be so, but in Illinois, any implication that a contract was undertaken for the direct benefit of a third party "must be so strong as to be an express declaration." (Ball, 187 Ill.App.3d at 177, 134 Ill.Dec. at 824, 543 N.E.2d at 107.) Consequently, the reasoning of the Texas court when considering this issue will not support the same conclusion under Illinois law.
The plaintiff also argues that the insurance requirement is merely an example of "the strong system of public protection built into all municipal contracts." Plaintiff points out that defendant also was required to comply with all federal, state, and local laws while performing under the contract. She notes that, in order to protect the public, Illinois law requires all motor vehicle operators to have liability insurance or some other way to pay claims arising from the negligent operation of a motor vehicle. (Ill.Rev.Stat.1991, ch. 95½, par. 7-100 et seq. (now 625 ILCS 5/7-100 et seq. (West 1992)).) In effect, plaintiff asserts that, by contractually obligating defendants to ensure that Unity maintain statutorily required liability insurance, the purpose behind the statutory requirement is also included in the contract.
In support of this assertion, plaintiff cites the case of Western Waterproofing Co. v. Springfield Housing Authority (C.D.Ill. 1987), 669 F.Supp. 901. In Western, the court reasoned that the plaintiff subcontractors were third-party beneficiaries of a provision in a contract between the contractor and the Springfield Housing Authority ("SHA") which required the SHA to procure from the contractor a payment bond. The court held that the plaintiffs could assert rights under the contract because, by statutory definition, the bond requirement was for the protection of subcontractors. Plaintiff asserts that this rationale is analogous to the facts here because the purpose behind motor vehicle liability insurance is the protection of the public. The distinguishing factor between these two cases, however, is that in Western the legislature required that all construction contracts entered into by a state entity must include "the requirement of a payment bond to protect * * * subcontractors." Thus, in Western, by statute, the contract required a payment bond for the express purpose of protecting the subcontractors. See Fox Lake v. Aetna Casualty & Surety Co. (1989), 178 Ill.App.3d 887, 907, 128 Ill.Dec. 113, 125, 534 N.E.2d 133, 145; Neenah Foundry Co. v. National Surety Corp. (1964), 47 Ill.App.2d 427, 432, 197 N.E.2d 744, 747.
The legislature, however, has not mandated that all public contracts include the requirement that contractors require their subcontractors to carry motor vehicle liability insurance. Thus, such a requirement in a contract will not necessarily be for the direct benefit of the public. The fact that the legislature may pass certain insurance requirements for the express purpose of protecting the public does not mean that public entities which include similar requirements in their municipal contracts likewise do so for the direct benefit of the public. Additionally, plaintiff does not cite any authority for the assertion that all municipal contracts contain these public policy protections nor that the inclusion of any of these provisions is intended for the direct benefit of the public.
We do not dispute that Illinois courts have found that "injured members of the general public are beneficiaries of liability insurance policies" and that their rights under the policies "vest at the time of the occurrence giving rise to their injuries." (Reagor v. Travelers Insurance Co. (1980), 92 Ill.App.3d 99, 102-03, 47 Ill.Dec. 507, 509, 415 N.E.2d 512, 514.) We also recognize that an injured party is considered a "real party in interest" to an insurance contract and, as such, is a necessary party in an insurer's declaratory judgment action because of his or her "substantial right in the viability of the *599 policy." (Society of Mount Carmel v. National Ben Franklin Insurance Co. (1st Dist. December 30, 1993), Nos. 1-91-2530 & 1-91-2533, ___ Ill.App.3d ___, ___ Ill.Dec. ____, ___ N.E.2d ____, consolidated, citing M.F.A. Mutual Insurance Co. v. Cheek (1977), 66 Ill.2d 492, 495, 6 Ill.Dec. 862, 864, 363 N.E.2d 809, 811; Reagor, 92 Ill.App.3d at 103, 47 Ill.Dec. at 509, 415 N.E.2d at 514.) However, even accepting these assertions and the idea that an insurance policy is no longer considered simply a private contract between two parties, the fact remains that no insurance contract was ever entered into in this case. If Unity had entered into a contract of insurance, plaintiff may have been a real party in interest and a beneficiary to the contract. We do not believe, however, that she is a real party in interest or a direct intended beneficiary to the general contract between the City and defendants which required defendants to require in their contracts with subcontractors that the subcontractors enter into insurance contracts.
Consequently, we do not believe plaintiff has overcome the presumption that the insurance requirements in the contract between the City and defendants were intended solely for the direct benefit of the parties to the contract and not for her direct benefit. Thus, plaintiff cannot maintain an action on the contract.
Accordingly, the judgment of the circuit court of Cook County is affirmed.
Affirmed.
O'CONNOR and MANNING, JJ., concur.